# BUFORD *v.* STATE.*

(In Banc.   February 21, 1927.   Suggestion of Error Overruled March 28, 1927.)

[111 So. 850.   No. 25764.]

1. INTOXICATING LIQUORS.  *Law, providing that no property rights shall exist in liquor, held not to repeal laws prohibiting sale of liquor (Laws 1918, chapter 189, section 5).*

   Laws 1918, chapter 189, section 5, providing that no property rights shall exist in liquors, *held* not to have affected the repeal of statute prohibiting the sale of intoxicating liquor, in view of legislative history (Code 1906, sections 1746, 1748; Laws 1908, chapter 115; Laws 1912, chapter 214; Laws 1916, chapter 103) showing no conflict in prior statutes, one of the provisions of which is brought forward in present act.

2. INTOXICATING LIQUORS.  *Jury.   Law authorizing state in liquor prosecution to give evidence of offenses committed before date alleged in indictment held constitutional (Hemingway's Code, section 2098; Const. 1890, sections, 26, 31, 32).*

   Code 1906, section 1762 (Hemingway's Code, section 2098), authorizing state in liquor prosecutions to give evidence of offenses of same character committed anterior to date laid in indictment, *held* not in violation of Const. 1890, sections 26, 31, 32, as depriving accused of right to be advised of accusation, depriving him of jury trial, or denying or impairing rights retained by, and inherent in, the people.

3. INTOXICATING LIQUORS.  *Failure of indictment to inform defendant names of persons to whom sales of liquor were made held not in violation of Constitution (Const. 1890, section 26).*

   Failure of an indictment, in prosecution for sale of intoxicating liquor, to inform defendant of names of persons to whom sales were made, *held* not in violation of Constitution 1890, section 26.

4. STATUTES.  *Statute referring to prior law for fine to be imposed held unconstitutional (Laws 1922, chapter 210, section 2; Hemingway's Code, section 2086; Constitution 1890, section 61).*

   Laws 1922, chapter 210, section 2, making it mandatory on trial judge to impose ninety-days imprisonment on conviction for

selling intoxicating liquor in violation of Laws 1912, chapter 214 (Hemingway's Code, section 2086), *held* in violation of Constitution 1890, section 61, in that it refers to prior statute for fine to be imposed.

5. *Criminal law. Judgment imposing sentence on verdict will be reversed, and cause remanded for new sentence, where statute authorizing sentence is held void (Laws 1922, chapter 210, section 2).*

Since Laws of 1922, chapter 210, section 2, making it mandatory that trial judge impose ninety-day imprisonment on conviction for sale of liquor, is void, judgment of lower court on conviction for sale of liquor will be reversed, in so far as it imposes sentence on the verdict and cause remanded for a new sentence.

ETHRIDGE and ANDERSON, JJ., dissenting.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 1105, n. 11; 17CJ, p. 371, n. 49, 51. Indictment and Information, 31CJ, p. 758, n. 87; p. 777, n. 83. Intoxicating Liquors, 33CJ, p. 517, n. 60, 62; p. 576, n. 63. Juries, 35CJ, p. 229, n. 76. Statute, 36Cyc, p. 1060, n. 76; p. 1076, n. 39. As to whether indictment or information for unlawful sale of intoxicating liquor must state name of person to whom sale is made, see annotation in 23 L. R. A. 581; 5 A. L. R. 409; 15 R. C. L. 387; 3 R. C. L. Supp. 453; 5 R. C. L. Supp. 837.

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

Mike Buford was convicted for selling intoxicating liquor, and he appeals. Reversed, and remanded for a new sentence, and otherwise affirmed.

*Kimbrough, Tyson & Kimbrough,* for appellant.

I. *Consider first the question of admitting evidence of more than one sale of intoxicating liquor in the trial of a cause.* See sections 26, 31 and 36, Constitution of 1890. Section 1762, Code of 1906 (section 2098, Hemingway's Code) is not good law. We find no case in which this court has directly sustained the constitutionality of the above section.

To state not only the gross injustice, but, as we see it, the utter flouting of section 26 of the Constitution, al-

lowing the state to charge defendant with committing *an* offense, by charging that he unlawfully did sell intoxicating liquor and then without giving him warning, information or notice of any character, introducing one or several witnesses to testify to the commission of *various* offenses, occurring at different times, different places, under totally different circumstances, and to totally different persons, is to convict the statute as an outlaw.

In the case of murder the name of the person alleged to have been killed must be given; in the case of larceny, grand or petit, a description of the property, its value, and its ownership must be laid in the indictment; in burglary, or in burglary and larceny, the same is true; in bigamy, in rape, in false pretenses, in being drunk or profane swearing in a public place—in, we might say, all cases known to the law the nature of the cause of accusation must be set forth in the indictment.

By what process of reasoning can the legislature be given authority to charge a defendant with the commission of one offense and without notice or warning to him, offer proof of any number of entirely separate and distinct offenses? It cannot be done under the common law. We can find no warrant for it under our constitution. On the contrary, section 26 and 31 specifically protect defendant; and if they did not, sections 14 and 32 most assuredly do.

Suppose two witnesses testified: one that he bought intoxicating liquor from defendant in a certain quantity, at a certain time, at a certain place, and narrates the physical surroundings and the conversation that took place resulting in said purchase; the other that he bought a different quantity, for a different price, of a different kind, at a different place and under totally different circumstances. The evidence of both witnesses is allowed to go to the jury. They come in with a verdict of guilty as charged. Have the several minds of the jurors met on either offense? Suppose six jurors totally disbelieve the testimony of the first witness, but were convinced

beyond a reasonable doubt of the truthfulness of the second; and suppose the other six jurors' minds were convinced of the exact contrary, that they believe all the testimony of the first witnëss, but totally disregarded that of the second. Has the defendant, in such cases, been given the benefit of the constitution and common justice? We submit that he has not.

Even when the state confines its proof to a single sale of intoxicating liquor, the defendant, under the rules as they now exist, may be wholly in the dark until he has entered upon the trial. He can prepare no defense, he does not know the person or his name, to whom he is charged with having made the sale. He does not know when it was made, who was present, what price is claimed to have been paid, how the price was paid, by whom, when, where, or in whose presence it was paid. He does not know what kind or character of intoxicating liquor he is charged with having sold, whether whiskey, wine, gin, ale or whatnot. What is his consternation and helplessness when two, three or a dozen witnesses, all perhaps unknown to him, are allowed to testify to the details of as many separate, independent, distinct and disconnected transactions? We do not believe the statute can stand the test. For light on this subject, see: *King* v. *State,* 66 Miss. 502, 6 So. 188; 1 Bish. Cr. Pro., paragraphs 1124-29; *Gassheimer* v. *State,* 52 Ala. 313; *State* v. *Crimmins,* 31 Kan. 376; *Lebovitz* v. *State,* 113 Ind. 26, and authorities there cited; *Bailey* v. *State,* 67 Miss. 333, 6 So. 188; *Naul* v. *McComb City,* 70 Miss. 699, 12 So. 903; *Ware* v. *State,* 71 Miss. 204, 13 So. 936; *Kettrell* v. *State,* 89 Miss. 666, 42 So. 609.

As to the proposition that the foregoing cases all arose before the operation of the statute under consideration, our answer is that if it was unlawful then to offer evidence of more than one sale, it was unlawful because it violated, especially, sections 14, 26 and 31 of the constitution.

*Thomas* v. *Yazoo City,* 95 Miss. 395, 48 So. 821, is the first case in which this court held, in a written opinion, that convictions based on evidence of several sales, even where the court declined to put the state to an election, would be sustained; and further held that, because of section 1762, *supra,* the rule announced in the foregoing cases was abrogated.

The question of the constitutionality of section 1762, Code of 1906, is not raised in the Thomas case although section 26 of the constitution is discussed. However, it is discussed in an entirely different light and from an entirely different angle. Therefore, the Thomas case is no authority for the constitutionality of said section of the code.

Whether this statute is a rule of evidence or "far more than a rule of evidence," we insist that it is violative of appellant's rights under section 14, 26, 31 and 32 of the constitution. He is deprived of due process of law. He is deprived of the nature and cause of the accusation against him. He is deprived of the right of trial by jury, of the opinion, or judgment, of *twelve* men on the *one* offense of which he is charged. He is deprived of an inherent right to have a fair charge and competent evidence against him. *Orick* v. *State,* 105 So. 467.

II. *We have no valid law against the sale of intoxicating liquor.* Historically, we know that until modern times it was never dreamed by the people that a time would come when there would be no *property rights* in intoxicating liquors. Until recently the right of property in such liquors was uniformly and universally recognized.

The first statute passed in the state, infringing upon, or qualifying, this unlimited and unrestrained right was section 1748, Code of 1906. At that time it was not "against the law" to own or possess liquors. But that statute related only to liquors kept or offered for sale in violation of law. The effect of the statute was to destroy the right of property in, to make contraband, liquor kept or offered for sale in violation of law. What

constituted a "keeping for sale" or "offering for sale" is prescribed by section 1746, Code of 1906.

A hasty review of our liquor legislation during the past thirty years may not be amiss. See section 1572, 1574, Code of 1892, the former section appearing as section 1746, Code of 1906. The legislature of 1907 passed three acts, chapters 113, 114 and 115, chapter 113 being commonly known as the state-wide prohibition law. It made it unlawful for the first time to manufacture intoxicating liquors. It also made it unlawful to sell or barter, or give away to induce trade, or to keep for sale or barter, or to be given away to induce trade, intoxicating liquors. It abolishes all licenses. The penalty remains the same as section 1746, *supra*. Chapter 114, Acts of 1906, treats of C. O. D. shipments. Chapter 115, Acts of 1908, specifically amended section 1746, supra, following substantially the language of chapter 113, *supra*. It differs from the original section 1746, only in eliminating the question of a license. This section was further amended by chapter 214, Acts of 1912, and this last act or amendment is the present law on the subject, being section 2086 of Hemingway's Code. It makes it unlawful to sell or barter, or give away to induce trade, or keep for sale, or barter, or to be given away to induce trade, any intoxicating liquors, and prescribed the penalty for violations.

In 1914 the legislature enacted chapter 127, Laws of 1914, generally spoken of as the four-quart law. In 1916 we were given the one-quart law—see chapter 103, Laws of 1916. In 1918 our present "bone dry" law came into being as chapter 189, Laws of 1918, and embodied in chapter 38, Hemingway's Supplement. Chapter 189, Laws of 1918, does not, in its title at least, purport to amend or repeal any of the laws of the state, but in the body of the act section 21, chapter 103, Laws of 1916, is specifically repealed. The act, however, undoubtedly does in fact repeal previously existing law. Undoubtedly section 5 of the act (chapter 189, Laws of 1918) re-

peals and becomes a substitute for section 1748, Code of 1906. This chapter by the sweeping character of its terms makes it unlawful to transport have, control or possess, or cause to be shipped or transported into this state any intoxicating liquors. It further provides that no property rights of any kind shall exist in such liquors, or in any other intoxicating liquors. When the legislature destroyed the right of one to have, control, or possess intoxicating liquor and destroyed the right of property of every kind in such liquor, the legislature killed chapter 124, Laws of 1912, or, at all events, that part of it prohibiting a *sale* of such liquors. *There can be no sale where there is no property right.* 36 Cyc. 1114; *Green* v. *Weller,* 32 Miss. 630; *Yerger* v. *State,* 91 Miss. 802, 45 So. 849; *Koch* v. *Budger,* 45 Miss. 247. Section 1358, Hemingway's Code, defines personal property. See, also, *Denwood* v. *State,* 1 How. 262; *State* v. *Huges & Moore,* 80 Miss. 609; 4 Words & Phrases (2nd Series), page 436 *et seq.; State* v. *Colonial Club,* 154 N. C. 177, 69 S. E. 771, Ann. Cas. 1912A 1079 is directly in point.

III. Chapter 210, Acts of 1922, sections 2 and 3 necessarily, by implication, amend section 2086, Hemingway's Code, and section 1275, Hemingway's Code, respectively for the reason that section 2 of said act increases the penalty to be imposed in case of a conviction of the unlawful sale of intoxicating liquors and because section 3 thereof deprives the trial court of the right to suspend said sentence or the execution thereof.

Chapter 210, Laws of 1922, does not create a separate and distinct offense, complete in itself, and prescribe the penalty for its violation. Section 2086, Hemingway's Code must be referred to in order to determine the penalty since while a "money fine" is prescribed, it is not set out in the act itself. It is void because it is in the teeth of section 61 of the constitution. *Canon* v. *State,* 105 So. 501; *Anderson* v. *State,* 96 So. 163; *Mayor & Board of Aldermen* v. *State, etc.,* 59 So. 873; *Seay* v. *Laurel Plumb-*

*ing Co.,* 71 So. 9; *Nations* v. *Lovejoy,* 80 Miss. 401; *Bell* v. *State,* 79 So. 85. The demurrer should have been sustained.

*W. A. Scott, Jr.,* Special Agent, for the state.

I. *Prosecutions under Code of 1906, section 1762 (Hemingway's Code, section 2098) are analagous to prosecutions for keeping a gambling house or other nuisances.* The theory of this law is distinctly set forth in *Thomas* v. *Yazoo City,* 95 Miss. 395, 48 So. 821.

II. *It is still unlawful in Mississippi to sell intoxicating liquors.* The legislature has not abolished all property rights in all intoxicating liquors. Alcohol owned by a druggist and used exclusively in his business is still property within the strictest legal interpretation of the word and it is subject to all the legal rights and liabilities of property. Intoxicating liquor becomes a contraband only when kept for a purpose contrary to law or when illegally sold. The minute, however, the property is used for an unlawful purpose the title vanishes. We cite *Smith* v. *State of Indiana,* 118 N. E. 954, L. R. A. 1918D 688, to the effect that property used for gambling purposes contrary to the statute is a subject of larceny. See, also, *Arner* v. *State,* 197 Pac. 710.

III. *Chapter 210, Laws of 1922, does not violate section 61 of the constitution.* This chapter repeals by implication section 1746, Code of 1906 (section 2086, Hemingway's Code) insofar as the sale of liquor is concerned, and makes the act of selling liquor a separate and distinct offense with a separate and distinct penalty.

Argued orally by *W. A. Scott, Jr.,* Special Agent, for the state.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a conviction for selling intoxicating liquor. The indictment alleges:

"That Mike Buford, in said county, on the 25th day of January, 1926, unlawfully did then and there sell vinous, malt, alcoholic, spirituous, and intoxicating liquors, against the peace and dignity of the state of Mississippi."

A demurrer to the indictment was overruled, and on the trial on the merits the state, over the appellant's objection, introduced evidence of more than one sale of intoxicating liquor made by him within two years anterior to the date laid in the indictment. The sentence imposed was a fine of two hundred fifty dollars and imprisonment for ninety days. The errors assigned are (1) the overruling of the demurrer to the indictment; (2) the admission of evidence of more than one sale; and (3) the sentence was imposed under section 2, chapter 210, Laws of 1922, which statute is void.

The ground of the demurrer is that the statutes prohibiting the sale of intoxicating liquor have been repealed by section 5, chapter 189, Laws of 1918, which provides:

"That no property rights of any kind shall exist in the liquors mentioned in section 1 of this act, or in any other liquors, liquids, bitters or drinks prohibited by the laws of this state to be manufactured, sold, bartered, or otherwise disposed of in this state," etc.

The argument in support of the demurrer is that there can be no sale of an article which the law does not recognize as property. Many authorities are cited which correctly define a sale as the term is ordinarily used in contracts, as a contract by which property is transferred from the seller to the buyer for a price in money paid or agreed to be paid by the buyer. That definition is of no value here, and the want of merit in the appellant's contention is so obvious that it will not be necessary to reply thereto *in extenso*.

Section 1746, chapter 40, Code of 1906, prohibits the sale of intoxicating liquor without a license therefor; and section 1748 thereof provides that—"There shall be no property in any intoxicating liquors kept or offered for sale in violation of law, or in any of the vessels or appliances used in connection therewith."

Chapter 115 of the Laws of 1908 amended section 1746 of the Code of 1906 by prohibiting absolutely the sale of intoxicating liquor, and re-enacted section 1748 thereof. Chapter 214 of the Laws of 1912 further amended the first of these sections by increasing the penalty for the sale of intoxicating liquor. Hemingway's Code, section 2086. Chapter 103 of the Laws of 1916 deals principally with the transportation of intoxicating liquor, but again brought forward section 1748 of the Code of 1906 as section 16 thereof (Hemingway's Code, section 2143). Chapter 189 of the Laws of 1918, here relied on by the appellant as having repealed the statutes hereinbefore referred to, deals principally with contracts for, and the transportation of, intoxicating liquor, but again brought forward, as section 5 thereof, section 1748 of the Code of 1906. This statute, therefore, is not in conflict with the prior statutes, but simply brings forward one of the provisions thereof. The appellant's contention, reduced to its logical conclusion, is that the legislature in one and the same statute first prohibited and then permitted the sale of intoxicating liquor, a *reductio ad absurdum.* The sale which the legislature here had in mind was simply the dealing with intoxicating liquor in such manner as theretofore constituted a sale thereof.

The statute under which the evidence of more than one sale was here admitted is section 1762, Code of 1906 (Hemingway's Code, section 2098), which provides that—"On the trial of all prosecutions for the violation of law by the sale or giving away of liquors, bitters, or drinks, the state shall not be confined to the proof of a single violation, but may give evidence in any one or more offenses of the same character committed anterior

to the date laid in the indictment or in the affidavit, and
not barred by the statute of limitations; but in such case,
after conviction or acquittal on the merits, ·the accused
shall not again be liable to prosecution for any offense of
the same character committed anterior to the day laid in
the indictment or in the affidavit.''

The appellant's objection to this statute is that it vio-
lates sections 26, 31, and 32, of the state Constitution,
which provide that (26) ''in all criminal prosecutions the
accused shall have a right . . . to demand the na-
ture and cause of the accusation;'' (31) ''the right of
trial by jury shall remain inviolate;'' and (32) ''the
enumeration of rights in this Constitution shall not be
construed to deny and impair others retained by, and
inherent in, the people.''

A similar statute dealing with prosecutions for gam-
bling appeared in our Codes at least as early as the Code
of 1880, as 2857 thereof, now section 1504, Code of 1906
(Hemingway's Code, section 1262). The constitutional
validity of neither of these statutes seems to have been
challenged though both of them, particularly the one
here under consideration, have been several times under
consideration by this court in cases in which convictions
thereunder were affirmed.

The ·predecessor of section 1762, Code of 1906, was
section 3, chapter 62, Laws of 1890 (section 1596, Code
of 1892), which provides:

''That in any prosecution for the violation of any law
by the sale of intoxicating liquors, it shall be lawful to
include one or more counts in the indictment, and unless
it is manifest to the court that the defendant will be
prejudiced thereby on his trial, it shall not be required
of the district attorney to elect on which count he will
proceed, but he may proceed on both counts to trial, but
in a general verdict of guilty on more than one count he
shall be punished but for one offense.''

This statute was not brought forward in the Code of
1906, section 1762 thereof; the one here under considera-

tion being substituted therefor. The validity of that statute seems .never to have been, and it undoubtedly could not have been, successfully questioned. This court and its predecessor, the High Court of Errors and Appeals, have repeatedly held, in passing on objections to the joinder in one indictment of several counts setting forth separate and distinct offenses, that there is no objection in point of law to* such practice. In the case of *Sarah* v. *State,* 28 Miss. 267, 61 Am. Dec. 544, the court said:

"The rule is well settled that, in point of law, there is no objection to the insertion of several distinct felonies of the same degree in the same indictment, against the same offender. 1 Chitty, Cr. Law, 253; *Kane* v. *People,* 8 Wend. (N. Y.) 203; *People* v. *Rynders,* 12 Wend. (N. Y.) 425; *Wash* v. *State,* 14 Smedes & M. 120. But while this is the acknowledged doctrine both in this country and England, it is held in the courts of the latter country to be irregular, in cases of felony, to charge upon the prisoner more than one distinct offense at one time in the same indictment. And if the joinder of more than one distinct felony in the same indictment be objected to before plea, the court will quash the indictment, lest it should embarrass the prisoner in his defense or prejudice him in his challenge to the jury. But this appears not to be regarded as a right, strictly speaking, of the accused, but as a matter submitted to the discretion of the court, which it might exercise as a measure of prudence for the safety of the accused."

This case was followed in·*Scott* v. *State,* 31 Miss. 473, *Strawhern* v. *State,* 37 Miss. 422.; *George* v. *State,* 39 Miss. .570; *Teat* v. *State,* 53 Miss. 439, 24 Am. Rep. 708; *Jones* v. *State,* 67 Miss. 111, 7 So. 220; *Hemingway* v. *State,* 68 Miss. 371, 8 So. 317; *Gates* v. *State,* 71 Miss. 874, 16 So. 342; *Cannon* v. *State,* 75 Miss. 364, 22 So. 827; *State* v. *Rees,* 76 Miss. 435, 22 So. 829; *Burges* v. *State,* 81 Miss. 482, 33 So. 499. Several of these cases, while recognizing the right to include in one indictment sev-

eral counts setting forth separate different offenses, disapprove of the practice thereof; all hold that the quashing of the indictment or forcing the state to elect on which it would proceed is within the discretion of the trial court to be exercised when the defendant would be prejudiced by a trial on more than one of the offenses at the same time.

In the Strawhern case, the indictment set forth in different counts separate assaults committed on different persons. In the Teat case, the defendant was charged in one count with the murder of George Steen, and in another county with the murder of William Steen, and in passing thereon the High Court of Errors and Appeals said:

"It is well settled that two offenses of the same character, though committed at different times, may be joined in the same indictment. It is said to be bad practice, and the state upon motion may, in the discretion of the court, be compelled to elect upon which she will proceed.

In *Hill* v. *State,* 72 Miss. 527, 17 So. 375, in which the indictment contained two counts for separate offenses, the court after reversing the judgment of the court below for another reason, indicated its disapproval of the joinder of the two offenses in the same indictment, again characterizing it as bad practice. In none of the cases does there appear a hint of any constitutional right of a defendant which would be violated by trying him for more than the offense at the same time. The holding of these cases is in accord with the great weight of authority. Bishop, in sections 424 and 425 of volume 1 of the Fourth Edition of his Criminal Procedure, says:

" (424) Since, in the criminal law, the pendency of one accusation against a man can never be pleaded in bar or abatement of another, it follows that no piling of count in the same indictment, or incongruous or other ill joinder of counts, is strictly illegal, so as to be demurrable, or subject the judgment to be arrested, or reversed. But—

"(425) Judicial discretion, not inflexible rule, regulates this question. Whenever the court, on seasonable application, deems that the due order of its proceedings, or the interests of a party, will be prejudiced by the multiplicity or ill joinder, it will in its discretion quash a count or the whole indictment, or order separate trials on the counts, or compel the prosecutor to elect on which one he will ask for a verdict, as the exigencies of the particular case and the time and manner of making the objection render most suitable."

And again:

"(452). By the practice everywhere, distinct misdemeanors may be joined in separate counts of one indictment, to be followed by one trial for all, and by conviction for each, the same as though all were charged in separate indictments; subject to practical limitations from judicial discretion, thus distinct libels, assaults, frauds, may in different counts be charged in one indictment, and each proved at the one trial. So in liquor selling, when made by statute a misdemeanor, with a fine for each sale, several counts for distinct sales may be combined in one indictment, and the accumulated penalty imposed."

The cases hereinbefore cited recognize, and some of them expressly hold, that a general verdict on a trial on an indictment alleging the commission of several offenses in different counts applies to all of the counts; and it was said in *Jones* v. *State,* 67 Miss. 111, 7 So. 220, that, when the verdict on the trial on such an indictment is guilty, sentence may be imposed on each count. When all of these decisions were rendered, the state Constitution contained provisions either identical with or similar to the ones here invoked by the appellant, and most of them were decided prior to the adoption of our present Constitution; consequently we must presume that the sections thereof here invoked were adopted in the light thereof.

Chapter 62, Laws of 1890 (section 1596, Code of 1892), and section 1762, Code of 1906 (Hemingway's Code, section 2098), each permit evidence of more than one sale to be introduced on the trial on an indictment charging the defendant with the sale of intoxicating liquor. In order for such evidence to have been introduced under the first statute, each sale sought to be proved must have been set forth in the indictment by means of separate counts; while under the second the state is relieved of the necessity of alleging the sales it intends to give in evidence by means of separate counts in the indictment; the charge in an indictment of the making of a sale of intoxicating liquor being by the statute made the equivlent of the insertion in the indictment of separate counts for each of the sales which the state intends to give in evidence. The notice to the defendant "of the nature and cause of the accusation" in each indictment is the same. It was not necessary, under chapter 62, Laws of 1890, to allege the dates on which, or the persons to whom, the several sales were made; and, on the trial, any sales made within the period of limitation, not exceeding the number set forth in the indictment, could be given in evidence. So that the only difference between a trial under the former statute and the latter statute is that, under the former, the number of sales to be introduced in evidence was restricted to the number of counts contained in the indictment, while, in a trial under the present statute, the number of such sales is restricted only by the number made within the period of limitation for prosecutions therefor.

The present statute is more favorable to a defendant than the former, for the reason that under the former he could be punished for each sale made, while under the present statute punishment for one sale only can be imposed, though he is thereafter free from prosecution for any other sale he may have made anterior to the date laid in the indictment.

We do not understand the appellant to contend that the failure of the indictment to inform the appellant of the names of the persons to whom the sales were made violates section 26 of the state Constitution. That it does not violate that section was expressly decided in *Riley* v. *State,* 43 Miss. 397, which case was approved in *Surratt* v. *State,* 45 Miss. 601, and *Gamblin* v. *State,* 45 Miss. 665, and was followed in *Lea* v. *State,* 64 Miss. 201, 1 So. 51.

The cases hereinbefore cited, not only dispose of the appellant's contention that the statute here under consideration does not deprive him of his right to be advised of the nature and cause of the accusation against him, but also disposes of his contention that it deprives him of trial by a jury; and it also clearly appears therefrom that at common law there was no immunity from a trial for more than one offense at the same time which the legislature could not by a statute abridge, and consequently such immunity or right is not within the reservation of rights contemplated by section 32 of the Constitution.

The cases relied on by the appellant wherein this court has held that more than one sale could be introduced in evidence on the trial on an indictment for the sale of intoxicating liquor, were decided prior to the enactment of the statute, and are therefore not in point here.

Coming now to the assignment of error which challenges the validity of section 2, chapter 210, Laws of 1922. We do not understand the appellant's contention to be that, if that statute is void, his conviction on the merits would be thereby affected, but only the sentence imposed on the verdict. If the statute is void, it of course can have no effect on prior statutes prohibiting and punishing the selling of intoxicating liquor. But, if it is void and punishment thereunder different from that provided by former statutes was imposed on the appellant, then of course the judgment, in so far as it imposes punishment, should be reversed, and the cause remanded for sentence under the proper statute.

The ground of the objection to this statute is that it violates section 61 of the state Constitution, which provides that—''No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.''

The statute is not complete on its face, and does not purport to create and provide for the punishment of a new offense, but manifestly was intended to amend former statutes prohibiting the sale of intoxicating liquors in so far as punishment by imprisonment therefor is concerned.

The statute on which this prosecution is predicated is chapter 214, Laws of 1912 (Hemingway's Code, section 2086), which provides for punishment—''by a fine of not less than fifty dollars nor more than five hundred dollars, or to be imprisoned in the county jail not less than one week nor more than three months, or both, for the first conviction for an offense committed after the passage of this act.''

Section 2, chapter 210, of the Laws of 1922, was manifestly intended to withdraw from the trial judge the discretion to impose a fine, or imprisonment, or both, and to make it mandatory on him to impose a term of imprisonment in each case of not less than ninety days. It refers to prior statutes for the fine to be imposed, and thereby does exactly that which section 61 of the Constitution was, among other things, meant to prevent. It is therefore void.

It it true that the punishment here imposed was not in excess of that which the former statute permitted, but it may be that the judge below, deeming himself bound by the new statute, either imposed a jail sentence that he would not have imposed, or fixed a longer period therefor than he would have done had he acted solely under the former statute.

This being true, we are of opinion that, in so far as it imposes sentence on the verdict, the judgment of the court below should be reversed, and the cause remanded

for a new sentence, but in all other respects it should be
affirmed.  So ordered.

*Reversed and remanded.*

ETHRIDGE, J. (dissenting.)

I am unable to agree with the majority opinion of the
court that section 1762, Code of 1906 (section 2098, Hem-
ingway's Code), is constitutional, and consequently can-
not consent to the affirmance of the judgment of convic-
tion because the agreed statement of facts shows that
more than one sale was introduced in evidence and that
therefore the conviction was had under one count in the
indictment for a number of separate offenses.

The indictment in the present case names a specific
date upon which the sale was made, and would be a good
indictment for one sale on that day; but, the indictment
not having named the person to whom the sale was made,
the time becomes of the essence of the evidence charged,
and the state would be confined to the date named in the
indictment.  It of course could be otherwise if the person
to whom the sale was made was alleged, even though no
date was fixed in the indictment.  But I think it would
not be permissible under the Constitution to charge a
single offense in the indictment and allow the state to
run through the entire period of two years anterior to
the date laid in the indictment, introducing a number of
separate offenses and permitting a conviction without
electing which sale the state would rely upon.  It is true
that at common law a number of counts charging different
offenses could be laid in one indictment, but in such
case each count would have to describe with particular-
ity the offense relied on, and this charge would have to
be specific and certain enough to inform the accused
of the nature and cause of the accusation.  It was not
permissible at common law to charge a number of of-
fenses in the same count; and it was not permissible at
common law to introduce other offenses than those
charged.

Section 26 of the state Constitution is to be construed in the light of the common law. It was intended to secure to each citizen the protection afforded by the common law as it existed at the time of the treaty recognizing the independence of the several states at the end of the Revolutionary War.

In *Ex Parte Grossman,* 267 U. S. 87, 45 S. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131, the rule with reference to construing the Constitution in the light of the common law was clearly and felicitously stated by Chief Justice TAFT, speaking for the court:

"The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the Convention who submitted it to the ratification of the Conventions of the thirteen states, were born and brought up in the atmosphere of the common law, and thought and spoke in its vocabulary. They were familiar with other forms of government, recent and ancient, and indicated in their discussions earnest study and consideration of many of them, but when they came to put their conclusions into the form of fundamental law in a compact draft, they expressed them in terms of the common law, confident that they could be shortly and easily understood."

The same rule was recognized in the case of *Byrd* v. *State,* 1 How. 163, where the court, at page 177, speaking upon this subject, said:

"As the law stood at the time of the formation of the federal government, both the common and statute law of England required the possession of a freehold as necessary to qualify a juror, and the right of trial by jury, being of the highest importance to the citizen, and essential to liberty, was not left to the uncertain fate of legislation, but was secured by the Constitution of this and all the other states as sacred and inviolable. The question naturally arises, how was it adopted by the Con-

stitution? That instrument is silent as to the number and qualifications of jurors; we must therefore call in to our aid the common law for the purpose of ascertaining what was meant by the term jury. It is a rule that when a statute or the Constitution contains terms used in the common law, without defining particularly what is meant, then the rules of the common law must be applied in the explanation. The framers of the Constitution must have meant, therefore, to secure the right of trial by jury as it existed in England, either by the statute, or common law, and the Constitution, in the absence of all subsequent legislation, would have secured to the citizen this mode of trial and all its incidents not incompatible with the republican form of our government. The legislature cannot abolish or change substantially the panel or jury, but it may, it is presumed, prescribe the qualifications of the individuals composing it."

The same rule, of course, would apply to indictments, and afford the protection to the citizen that was given by the particularity required in indictments at the common law.

In *Smith's Administrator* v. *Smith,* 1 How. 102, in discussing jury trial, the court, speaking through Chief Justice Sharkey, said:

"It seems to me that this provision in the Constitution not only extends to issues of facts made up, but that it must necessarily secure the right to make up an issue; that, although an issue is in most cases a prerequisite to a trial by jury, yet it does not follow that by giving a summary remedy a party can be deprived of a constitutional right.

"If the legislature can say in any given case, that a party may recover by motion to the court, without the privilege of an issue, they may, as to all matters of contract at least, say the same thing, and thus destroy the right of trial by jury.

"The right of trial by jury, as it exists here, is derived from the common law, and it is so highly valuable to the

citizen, so essential to liberty, that it is secured as a constitutional right, and must, in a government like ours, be understood to extend at least as far as it did at common law, and if alterations are made, policy would dictate an extension rather than a restriction of a privilege invaluable in itself, and so highly prized by the citizen.''

In *Murphy* v. *State,* 24 Miss. 590, this court, speaking through Mr. Justice YERGER, in discussing the provision for indictment in the Constitution, said:

''The constitutional provision, that every man charged with a crime has a right 'to demand the nature and cause of the accusation against him,' was intended to secure to the accused such a specific designation of the offense laid to his charge, as would enable him to make every preparation for his trial necessary to his full and complete defense. We therefore think that under it the accused is entitled to demand 'such a certain description of the offense charged, and statement of the facts by which it is constituted, as will fully identify the accusation, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial for another, without any authority; and also that the defendant may know what crime he is called upon to answer, in order that he may be prepared with his evidence, and that his conviction or acquittal may insure his subsequent protection, should he again be questioned on the same ground; and that he may be enabled to plead a previous conviction or acquittal of the same offense in bar of any subsequent proceedings against him.'

''The indictment ought, in our opinion, to describe and identify the offense with such a degree of certainty that the accused and the court may know, that the offense for which he is put upon his trial, is the same offense with that for which he stands indicted, in order that he may plead in bar a previous conviction or acquittal. An indictment which does not contain this degree of certainty does not communicate to the accused 'the nature and cause of the accusation' against him, in the

manner contemplated and designed by the bill of rights. Nor has the legislature the power to dispose with such a decree of certainty in indictments.''

In the case of *Riley* v. *State,* 43 Miss. 397, relied upon principally by the majority opinion, the indictment charged specifically the date upon which the offense was committed, and further charged that the defendant with in the jurisdiction of the court—''being then and there a druggist, apothecary, or physician, and having a license as required by  law to retail vinous and spirituous liquors in quantities less than one gallon for medicinal, sacramental and culinary purposes, did then and there sell spirituous liquors in a quantity less than one gallon, otherwise than in good faith for medicinal, sacramental, or culinary purposes, contrary to the form of the statute,'' etc.

The fact that the date was alleged was the very foundation upon which the decision was rendered, dispensing with the necessity of naming the person to whom the sale was made.  In that opinion the court discusses the things the indictment was intended to secure to the accused, and quotes from the case of *Shabe Williams* v. *State,* 42 Miss. 328, five propositions as follows:

''(1)  In order to identify the charge, lest the grand jury should find a bill for one offense, and the defendant be put on trial for another, without any authority.

''(2)  That the defendant's conviction or acquittal may inure to his subsequent protection, should he be again questioned on the same grounds; the offense, therefore, should be defined by such circumstances as will, in such case, enable him to plead a previous conviction or acquittal of the same offense.

(3)  To warrant the court in granting or refusing any particular right or indulgence which the defendant might claim as incident to the nature of the sale.

''(4)  To enable the defendant to prepare for his defense in the particular case; or, if he prefer it, to submit to the court by demurrer, whether the facts alleged

(supposing them to be true) so support the conclusion in law as to render it necessary for him to make an answer to the charge.

"(5)  Finally, to enable the court, looking at the record, after conviction, to decide whether the facts charged are sufficient to support a conviction of the particular crime, and to warrant their judgment."

In the *Shabe Williams case,* 42 Miss. 328, the indictment was in the following words:

"The grand jurors elected, etc., present that Shabe Williams, on the 19th of March, 1866, in the county of Davis aforesaid, in and upon one Dick Smith, willfully, feloniously, and of malice aforethought an· assault did make, and him the said Dick Smith did strike, cut, and wound, with intent of him, Shabe Williams, willfully, feloniously, and of malice aforethought, to kill and murder the said Dick Smith, against the peace and dignity of the state of Mississippi."

After setting out the essentials of the indictment, as above stated, the court said:

"It is a general rule, that all indictments upon statutes, especially the most penal, must state all the circumstances which constitute the definition of the offense in the act, so as to bring the defendant precisely within it; they must pursue the precise and technical language employed in the statute in the definition or description of the offense. Starkie on Crim. Pleading, 249; 1 Chitty's Crim. Law, 280-283; *Ainsworth* v. *State,* 5 How. 242; *Anthony* v. *State,* 13 Smedes & M. 263; *Ike* v. *State,* 23 Miss. 525; *Riggs* v. *State,* 26 Miss. 51"—and reversed the judgment of conviction.

In George's Digest of Mississippi Reports, at page 813, section 289, under the title "Criminal Law," is set forth the essentials of an indictment as existed in the early days of the state's history. A perusal of these cases shows that indictments were held to strictness in describing the offense, giving the necessary information as to the facts upon which the indictment was predicated, and

not a mere general blanket charge of violating the law as to the particular offense without naming the time, place, persons, or other circumstances as seems to be the tendency under modern practice.

In Williams' case, digested at this point, it is said:

"The legislature passed an act prohibiting trading with slaves without the consent of the master, owner, etc., and provided that, in indictments under the law, it should not be necessary to specify the commodity sold to, or purchased from the slave, nor the name of the slave, nor the name of his owner."

The court held: "That the act was unconstitutional, as it dispensed with that designation of the offense charged, necessary to enable the accused to make his defense." That "such an indictment should either specify the name of the owner, or of the commodity. But, where the commodity alone is mentioned in the indictment, the day the crime is alleged to have been committed becomes a necessary descriptive part of the offense, and must be proved as laid."

In *Rigg's case,* 26 miss. 51, it was said:

"The facts and circumstances which constitute the offense as charged must be stated with precision and certainty; and every material circumstance in regard to time and place must be averred with that degree of certainty, which is sufficient to exclude every other intendment."

In *Norris' case,* 33 Miss. 373, it was held that—"The Constitution secures the accused the right to have the facts which constitute the alleged crime stated in the indictment with sufficient certainty to enable him to know with what offense he is charged, and to prepare his defense, both by plea of not guilty, and of former acquittal or conviction."

In *Newcomb's case,* 37 Miss. 383, it was held that— "The constitutional right of the accused, to demand 'the nature and cause of the accusation against him,' cannot be waived or surrendered, and therefore, if the indict-

ment do not contain sufficient description of the offense to notify the accused of 'the nature and cause of the accusation,' it is a nullity, and may be objected to at any time.''

See, also, *Lewis* v. *State,* 49 Miss. 354.

The federal decisions construing the Constitution of the United States, are to the same effect. In Watson on the Constitution, in discussing the provision of the Sixth Amendment giving the accused in criminal cases the right to be informed of the nature and cause of the accusation against him, at page 1481, it is said:

''This is a most humane and just provision, and is one of the most valuable which the Constitution affords to any accused person. It would be difficult indeed for one who has been indicted to prepare his defense properly unless he should be informed of the nature of the charge against him. A mere general statement consisting of vague and indefinite expressions will not do. The charges must be specific and accurate.''

He quotes from *United States* v. *Mills,* 7 Pet. 138, 8 L. Ed. 636, as follows:

''The general rule is that in indictments for misdemeanors created by statute, it is sufficient to charge the offense in the words of the statute. There is not that technical nicety required as to form, which seems to have been adopted and sanctioned by long practice, in cases of felony, and with respect to some crimes, where particular words must be used, and no other words, however synonymous they may seem, can be substituted. But in all cases, the offense must be set forth with clearness, and all necessary certainty, to apprise the accused of the crime of which he stands charged.''

He quotes from *United States* v. *Cook,* 17 Wall. 168, 21 L. Ed. 538, as follows:

''Offenses created by statute, as well as offenses at common law, must be accurately and clearly described in an indictment, and if they cannot be, in any case, without an allegation that the accused is not within an

exception contained in the statutes defining the offense, it is clear that no indictment founded upon the statute can be a good one which does not contain such an allegation, as it is universally true that no indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offense is composed. With rare exceptions, offenses consist of more than one ingredient, and in some cases of many, and the rule is universal that every ingredient of which the offense is composed must be accurately and clearly alleged in the indictment, or the indictment will be bad, and may be quashed on motion, or the judgment may be arrested, or be reversed on error.''

In *United States* v. *Cruikshank,* 92 U. S. 557 (23 L. Ed. 588), the supreme court of the United States held:

''In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' . . . It is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species; it must descend to particulars.' . . . The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decided whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place and circumstances.''

The indictments involved in that case were indictments against Southern citizens for conspiring to deny colored

citizens of their rights under the federal laws, or their
civil rights. If the United States had been as lax in its
construction of the Constitution as the majority of the
court in the present case are, most of our fathers would
have been "jail birds."

See, also, *U. S.* v. *Simmons,* 96 U. S. 360, 24 L. Ed.
819.; *U. S.* v. *Carll,* 105 U. S. 611, 26 L. Ed. 1135; *U. S.*
v. *Britton,* 107 U. S. 661, 2 S. Ct. 512, 27 L. Ed. 522; 3
U. S. Dig., section 40, p. 3332 *et seq.; Cochran* v. *U. S.,*
157 U. S. 286, 15 S. Ct. 628, 39 L. Ed. 704; *U. S.* v. *Behr-
man,* 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619.

In *Breeland* v. *State,* 79 Miss. 327, 31 So. 104, it was
held that—"The act of 1898 (Laws 1898, p. 87), making
it a felony for a person, by threats of injury, to intimi-
date another into changing or abandoning his home or
employment, creates two distinct offenses, and it is not
permissible to charge them both in the same count of an
indictment."

It was also held in that case that—"An indictment un-
der the statute for intimidating another into a change or
abandonment of his home must aver in direct and posi-
tive terms that the injured party had a home; and if
the indictment be for intimidating another into a change
or abandonment of his employment, it must aver in the
same manner that the injured party had an employment."

Also that—"It is necessary under the statute, if the
charge be for intimidating another into a change or
abandonment of his employment, that the indictment
should define, in general terms at least, the nature of the
business in which the person intimidated was employed,
and to show that the employer was a natural person, co-
partnership or corporation, as the case may be."

In *Telheard* v. *City of Bay St. Louis,* 87 Miss. 580, 40
So. 326, it was held that section 26 of the Constitution
of 1890 applies to all prosecutions before all inferior
courts, and that—"An affidavit which charges that the
accused on a certain date, within the limits of the city,.
violated an ordinance of the municipality, designating

the same by number and section, is insufficient within the meaning of Constitution 1890, section 26, providing that the accused shall have the right to demand the nature and cause of the accusation against him.''

In *State* v. *Glennen,* 93 Miss. 836, 47 So. 550, appellants were indicted under section 3430, Code of 1906, providing that municipal authorities shall annually publish a statement of the taxes collected and expenditures made, and that the mayor and aldermen shall be suspended from office, if there has been, unauthorized by a vote of the electors, an increase of taxation over the year next preceding or the debts of the municipality have been increased by contract or ordinance participated in or voted for by them. The court held that ''an indictment is demurrable if it fail to charge the time when or the place where the offense was committed.''

These cases, it seems to me, clearly demonstrate that there can be no such thing as a blanket indictment, covering a period of two years, and charging by implication that an offense was committed against the law by a sale made to every person in the world within the period of time and within the limits of the county. If section 1762 is to be upheld as a valid statute, it must be done upon the predicate that the indictment charges such a multitude of offenses. It seems to me that this is so absurd a view that its fallacy would be perceived at once. If an indictment of this kind could be sustained as to intoxicating liquors, it can be sustained as to any other offense that the legislature may place in the same category. It could just as well be held that an indictment charges a person with murder on a named date, without specifying who was murdered, and that he could be prosecuted for any murder committed within the county within the period of limitation which, in the present charge, is two years; there being no limit for the prosecution for murder. If the legislature can authorize an indictment to embrace a charge for every day and every minute of the day for a period of two years, it would have the same

power to remove the bar of limitation or to increase
the time limit at its will and pleasure. In the very nature
of things no man can, from the indictment, determine
what offenses he will be tried for when the trial ap-
proaches. The indictment gives him no information
whatever, or person, place, or circumstance, and in fact
it gives him no notice of the matter except a period of
two years. It would be manifestly impossible for a
person to prepare his defense in at least many cases.
One complete defense to a charge of crime is an alibi,
and to require a person to have witnesses to prove where
he was each day and every fractional part of a day for
a period of two years is manifestly impossible. Under
such an indictment he may be confronted at the trial
with any living person competent to testify, or all of
them, and may be charged with one or more offenses for
each day of the period of time. The indictment in fact
gives him no information whatever except that he is
charged with the sale of intoxicating liquors. The state
under this statute is not bound by the time; it does not
have to select one offense and proceed with that, but it
may select as many as it chooses, whether these offenses
were investigated by the grand jury or not, or whether
anybody has preferred an affidavit charging any of them
or not. In other words, it authorizes his conviction of
offenses that no one knew of at the time the prosecution
was instituted or the indictment found. The state can
abandon the offense before the grand jury altogether,
disregard that offense, and proceed anew upon any other
offense to which it may happen to have a witness willing
to swear to its commitment within the two-year period.

Section 26 becomes meaningless jargon with this in-
terpretation put upon it. In the language of the negro
dialectician, "It says words but don't mean nothing."

Such a construction of the statute not only violates
section 26 with reference to indictments, but it denies the
defendant "due process of law." Due process of law
means the law of the land administered according to the

common standards existing at the time the Constitution was adopted.

In criminal cases there must be either an indictment or an information specifying what the accused is charged with, with sufficient information to enable him to prepare to meet the charge by testimony. It is true the statute undertakes to give him an acquittal of all other offenses except the one he is convicted of, but the trouble with that is that a man has a right not to be convicted at all, and a right to a hearing on the particular charge for which he is to be tried. No such proceeding was known at the common law. A man could only be tried for the offense of which he was charged, and the charge had to be limited to that particular offense. It is true that the facts constituting the crime might, according to circumstances and intent, vary the crime, and in such case the indictment could charge in different counts the various possible crimes that might arise out of the particular facts of the particular transaction, but they could not prefer an indictment charging murder in one count, theft in another, arson in another, burglary in another, and robbery in another. It must be such offenses as might grow out of a given state of facts according to the intention and accompanying circumstances. To charge a man with all the crimes in the calendar in one count certainly would not constitute due process of law, and I have no doubt but that the statute violates both the due process clause of the state Constitution and the Fourteenth Amendment.

Again, a trial under such circumstances violates the right to trial by jury. Trial by jury necessarily involves the common concurrence of the mind of each of the jurors in a common conclusion on the same facts. It would be a denial of trial by jury to require a jury of twelve men—as it does in criminal cases—to concur in a conviction, where one juror was of the opinion that the accused was guilty of one of the crimes testified to against him, and another juror to reach his conclusion on a dif-

ferent state of facts, involving different persons, times, and places, and so on through the twelve. This could not be done either at common law or under the statutes prior to the enactment of section 1762, Code of 1906 (section 2098, Hemingway's Code). And our court at one time discussed this question in a very forcible opinion in *King* v. *State,* 66 Miss. 502, 6 So. 188. The defendant was indicted for a violation of the prohibition laws of 1888 (Laws 1888, chapter 143) prohibiting the sale of intoxicating liquors in supervisors' district No. 1 of Copiah county, Miss.

On the trial more than one offense was introduced in evidence, and the court at page 506 of the Mississippi Report (6 So. 189) said:

"After the state had proved distinctly one unlawful sale, it was error to admit testimony of other and different sales. The general rule is, that the issue on a criminal trial, shall be single, and that the testimony must be confined to the issue, and that on the trial of a person for one offense, the prosecution cannot aid the proof against him, by showing that he committed other offenses. Whart Cr. Ev., section 104; 1 Bish. Cr. Pro., section 1120 *et seq.* The reason and justice of the rule is apparent, and its observance is necessary to prevent injustice and oppression in criminal prosecutions. Such evidence tends to divert the minds of the jury from the true issue, and to prejudice and mislead them, and while the accused may be able to met a specific charge, he cannot be prepared to defend against all other charges that may be brought against him.

" 'To permit such evidence,' says Bishop, 'would be to put a man's whole life in issue on a charge of a single wrongful act, and crush him by irrelevant matter, which he could not be prepared to meet.' I Bish. Cr. Pro., section 1124.

"There are exceptions to the rule which has been stated—such as where the offense charged and that offered to be proved are so connected as to constitute but

one transaction, or where it is necessary to identify the offender, or where it is material to prove motive, and there is apparent relation or connection between the act proposed to be proved and that charged, or where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is neces-sary to prove scienter or guilty knowledge, and the like —but none of these exceptions apply here. 1 Bish. Cr. Pro., sections 1124-1129.; *Gassenheimer* v. *State,* 52 Ala. 313; *State* v. *Crimmins,* 31 Kan. 376 [2 P. 574] *Lebovitz* v. *State,* 113 Ind. 26 [14 N. E. 363, 597], and authorities there cited.

"Where there are several offenses, for either one of which the accused may be convicted under the indictment, the prosecution should elect the offense which it will pur-sue, and the testimony should be confined to that offense, unless the case is within some of the exceptions, which render the proof of other distinct offenses admissible. After one offense is proved, the prosecution should not have liberty of the wind, to blow where it listeth. The authorities are not harmonious as to when the prosecu-tion will be required to make election in such case, or as to how long a prosecuting officer will be permitted 'to fish with his witnesses for evidence' before selecting the offense for which he will ask conviction; but it is be-lieved that justice is best promoted by allowing the tes-timony for the prosecution to go far enough to identify and show one distinct offense, and when this is done, to restrict the evidence to that offense. 1 Bish. Cr. Pro., section 462; Whart. Cr. Ev., 104.

"The suggestion that appellant's conviction of either of the sales given in evidence in this case would operate as a bar against his being subsequently prosecuted for the others, does not meet the objection made by him. He is not now looking out for barriers against other. prosecutions, but is complaining of injustice being done in his present conviction. He claims that he ought not to have been convicted at all, and if his conviction has

146 Miss.—7.

been reached by improper methods, it is no answer to say to him, that if his conviction is allowed to stand, he cannot be convicted of the other sales. . . . But what is of greater consequence to a defendant charged with a single offense, against whom evidence of numerous and different offenses has been admitted, is that, while he is entitled to have the concurring judgment of twelve men against him before he can be lawfully pronounced guilty of the offense with which he is charged, he may in such case be convicted by a divided jury, or by a jury, no two members of which agree that he is guilty of the same offense. If there is evidence of two separate offenses, and the jury may convict of either, six of the jury may believe that the accused is guilty of the first, and not of the second, while the other six may believe that he is guilty of the second offense, and not of the first. The result would be that all the jury would agree that he was guilty, without agreeing on the offense of which he was guilty.

"And if instead of testimony being produced to establish two distinct offenses, it shows twelve, it is possible that one juror might be convinced that the defendant was guilty of some particular one of the offenses, and of none other, and thus each juror might be convinced that he was guilty of some particular one of the offenses, and all agree to a conviction, and yet no two jurors be agreed upon any one offense."

It seems to me that it is utterly impossible to tolerate a situation of this kind, in a court of justice in a civilized land. This statute is not only not constitutional, but it is unjust and tyrannical. Under it the innocent may be borne down, crushed by an avalanche of testimony of separate offenses, while the guilty can, by being prosecuted under this statute, escape just punishment for many offenses, and for a single punishment escape justice for the statutory period.

I regret the necessity of dissenting in a case of this kind, because I have no sympathy whatever for those

who commercialize the weakness of their fellow citizens by selling them intoxicating liquors, or those who derive profit from criminal practices. The liquor evil has been a great curse to the world, and public prejudice has run exceedingly high in this state and in this country against those who profit by the manufacture and sale of it. If it were possible to limit prosecutions to those actually guilty, there would be some excuse for fighting the devil with fire, but it has always happened that innocent men are sometimes accused of crime, and, when they are accused of a crime against which the public prejudice runs high, it is exceedingly difficult for them to secure justice without the aid of some organization to thwart the efforts of the officers charged with the duty of administering the laws of the land. This condition ought not to exist.

Crime has existed throughout the known history of the world; it has flourished even more in despotic countries than it has in other countries. The securities offered by the Constitution have been proven by ages of experience to be necessary for the safety and security of the innocent.

Reluctant as I am to dissent in a case involving such laws, I am not willing to sacrifice constitutional principles to appease the passions of the hour. Protection will be swept away from every citizen because the evil example of section 1762, Code of 1906 (section 2098, Hemingway's Code), will be followed in other cases, and ultimately the right to be informed of the nature and cause of the accusation will be swept from the field, and tyranny will become reinstated, and will hold its pernicious and destructive sway in the high places of the land.

## ON SUGGESTION OF ERROR.

ANDERSON, J.

On the former consideration and decision of this case by this court, it was with great doubt and reluctance that I

gave my assent to the constitutionality of section 1762, Code of 1906, section 2098, Hemingway's Code. Upon a reconsideration of the question on suggestion of error, I am now convinced, beyond any reasonable doubt, that the statute in question violates section 26 of our Constitution. Therefore, I join in Judge ETHRIDGE's dissent handed down on the first hearing. It follows, of course, that I think the suggestion of error ought to be sustained.

HOLDEN, J. (specially concurring).

When the decision was rendered in this case, I announced orally from the bench that I concurred in the majority opinion, because the question involved as to the constitutionality of the statute had already been decided by this court several times; and that while I thought the prior holding of this court on this question was wrong, and that as an original proposition I would have maintained that the statute was unconstitutional for the reasons given in the dissenting opinion herein of Judge ETHRIDGE, that, still, I believed it to be the duty of a judge of this court to follow the rule of *stare decisis,* and I, for this reason, therefore joined in the main opinion. I orally expressed the view from the bench that the dissenting opinion was the correct one, but that my respect for the prior decisions of this court impelled me to join with the majority. I now put these thoughts in writing so that the written record will reflect my views and satisfy my conscience in the premises.