STATE OF NORTH CAROLINA ON THE RELATION OF ALLEN J. MAXWELL, COMMISSIONER OF REVENUE, v. HANS REES' SONS, INC.

(Filed 16 June, 1930.)

1. **Taxation B f—Statute levying income tax on foreign corporations in proportion to property in the State is constitutional.**

   The State statute taxing the income of a foreign corporation in proportion as the fair cash value of its real estate and tangible personal property in this State on the date of the close of the fiscal year is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deduction of encumbrances thereon and expressly excluding from the meaning of the words "tangible property" moneys in bank, shares of stock, bonds, notes, credits, evidences of debt, applying equally to domestic corporations, is not arbitrary or unreasonable, nor does it impose a burden on interstate commerce, and the statute is constitutional upon its face.

2. **Same—Operation of statute levying income tax on foreign corporations held not unconstitutional.**

Where the manufacturing plant of a foreign corporation is in this State and its warehouse and distributing point is in another State, the corporation cannot maintain that its profits are derived from the separate operations of buying raw materials, manufacturing, and selling, and that therefore the greater proportion of its profits are derived from operations outside the State and that the State statute levying a tax on its income in proportion to the property inside the State is to its property outside the State is unconstitutional in its operation, the buying, manufacturing and selling being component parts of one operation, and the statute prescribes a fair, reasonable and constitutional method of taxing the property within the State.

3. **Same—Exclusion of evidence offered to show that statute taxing income of foreign corporations operated unconstitutionally held not error.**

Where a foreign corporation has paid its income tax in this State under the provisions of a valid statute, evidence introduced for the purpose of showing that in the instant case the statute was unconstitutional in its operation is properly excluded where it is not material or relevant for the purpose.

4. **Taxation E c—Where tax is paid without protest action to recover the tax will not lie.**

Where a foreign corporation pays an income tax assessed by the State under protest, but pays without protest such tax assessed for the previous years, its protest for the one year does not entitle it to maintain an action to recover the taxes paid without protest on the ground that the tax was wrongfully collected.

CIVIL ACTION before *McElroy, J.,* at November Term, 1928, of BUNCOMBE.

On 17 August, 1927, the defendant filed a petition with R. A. Doughton, Commissioner of Revenue, "for a rehearing and readjustment of the income tax assessed against it for the years 1923, 1924, 1925, and 1926." The defendant duly filed income tax returns for said years in accordance with the requirements of chapter 4, section 201 of the Public Laws of 1923, and section 201 of chapter 101 of the Public Laws of 1925. These returns are contained in the record and we deem it unnecessary to recapitulate them. On 11 March, 1925, the defendant paid without protest the sum of $3,959.88, the amount of income tax as shown by its return. On 14 March, 1925, the defendant paid without protest the sum of $5,221.90, the amount of tax due for the year 1924, according to its return. On 15 March, 1926, the defendant paid without protest the sum of $3,453.28, same being the amount of tax due for the year 1925, according to its return. On 11 April, 1927, the defendant paid under protest the sum of $3,651.46, same being the tax computed according to its return.

Thereafter the Commissioner of Revenue audited the returns filed by the defendant and assessed an additional tax. After making an examination of the returns the Commissioner of Revenue reported to the defendant as follows:

### 1923.

"Income reported to this department was $230,279.40 to which was added debts reclaimed not included in original report of $2,552.50 and allowed dividends in the sum of $904.00, which left net income corrected to $231,927.90. You reported for the purpose of allocating income to this department total valuation of property of $1,582,297.99. He reported total value of the property allowable for allocation purposes consisting of inventories, land, buildings, machinery, equipment, furniture and fixtures of $1,148,114.14. This operated to increase your percentage from .5732 to .837. This percentage of net income of $231,927.90 equals $194,123.65 taxable at 3 per cent and results as follows:

| | |
|---|---:|
| At 3 per cent | $5,823.61 |
| Previously paid | 3,959.88 |
| Balance | 1,863.73 |
| Interest | 260.92 |
| Total additional | 2,124.65 |

### 1924.

For this year you reported $253,921.82 to which the deputy added income tax deducted, which is not allowable under the North Carolina law, of $3,959.88, making total net income of $257,881.70. You reported assets as a whole for allocation purposes of $2,241,654.94. He reduced this amount to $1,792,110.61. For this year he also reduced property in North Carolina from $1,536,861.36 to $1,529,323.24, allowing in both instances only inventories, land, buildings, machinery, equipment, furniture, fixtures, etc. This increased your percentage in North Carolina from .6855 to .8589. This percentage of the net income above stated makes income taxable to North Carolina $221,494.59 and results as follows:

| | |
|---|---:|
| Tax at 3 per cent | $6,644.84 |
| Previously paid | 5,221.90 |
| Balance | 1,422.94 |
| Interest | 113.83 |
| Total additional | 1,536.77 |

1925.

You reported as net income $139,043.43. The books showed income $141,339.53, plus State income tax deducted $5,221.90, making correct income $146,561.43. You reported property value as a whole for allocation purposes $2,293,929.85. After eliminating items included which are not permitted under the law this amount was reduced to $2,147,097.12 and percentage increased from .6209 to .6632. This percentage of the total net income is $97,217.13 and results as follows:

| | |
|---|---:|
| Tax at 4 per cent | $3,888.68 |
| Previously paid | 3,453.28 |
| Balance | 435.40 |
| Interest | 8.71 |
| Total additional | 444.11 |

I wish to state with reference to change in property values that under the law and decisions of this department (concurred in by the Attorney-General) that all cash, bills receivable, good will, stock in other corporations and property of like character is not allowed to be used as tangible property within the meaning of the act for the purpose of allocating income to this State.

I sincerely trust that the above is clear and that you will favor me with your check as requested in my previous letter."

A hearing was had by the Commissioner of Revenue, and on 22 February, 1928, the said Commissioner made certain findings of fact and conclusions of law which are set out in the record. These findings of fact are to the effect that the defendant in its original return had included "both tangible and intangible assets, disregarding the provision of section 311 of the Revenue Act which specifies that only real estate and tangible personal property may be used in such allocation." The same reason is given for the changes made in the returns for the years 1924, 1925, and 1926. Thereupon the Commissioner of Revenue denied the petition of defendant. Thereafter the defendant filed certain exceptions to the findings of fact and conclusions of law made by the Commissioner which were overruled by the Commissioner, and the defendant appealed to the Superior Court of Buncombe County and waived a jury trial.

The cause was heard and the following judgment entered:

"This cause coming on to be heard before his Honor, McElroy, J., jury trial having been waived, it being agreed that his Honor should find the facts with the same force and effect as by jury trial and render judgment thereon, it being admitted that the Commissioner of Revenue

in assessing the tax complained of has followed the method set forth in section 311 of the Revenue Act of 1927, subsection A, and similar sections of the act of 1923 and 1925, and that the valuation fixed for the real estate and tangible property of the complaining taxpayer, both within and without the State, is admitted to be correct, and that the total net income of the complaining taxpayer used for a basis of calculation by the Commissioner of Revenue is admitted to be correct, and that the allocation thereof for the purposes of taxation was made in accordance with the method indicated in the statute referred to, the complaining taxpayer having offered testimony as appears in the record, over the objection of the State, and upon the conclusion of the testimony the State having moved to strike out the testimony offered as immaterial, and the court being of the opinion that such testimony is immaterial, allows the motion to strike out and holds upon the admission of the taxpayer that the statutory method has been followed and that the tax levied by the Commissioner of Revenue is a valid tax and that the section authorizing the said levy is not in violation of any constitutional rights of the taxpayer. It is therefore ordered and adjudged that the action be dismissed at the cost of the taxpayer."

From the foregoing judgment the defendant appealed.

*Attorney-General Brummitt and Assistant Attorneys-General Nash and Siler for the State.*

*Harkins & Van Winkle for defendant.*

*Louis H. Porter, 30 Broad Street, New York City, of counsel for defendant.*

BROGDEN, J. Certain admissions were made by the defendant at the hearing in the Superior Court and set forth in the judgment. In substance these admissions were:

(a) In assessing the tax the Commissioner of Revenue followed the statutory method prescribed in chapter 4, section 201 of the Public Laws of 1923, chapter 101, section 201 of the Public Laws of 1925, and section 311 of chapter 80 of the Public Laws of 1927; (b) that the valuation of the real estate and tangible property of the taxpayer "both within and without the State" is correct; (c) that the total net income used as a basis for the calculation of tax is correct; (d) that the allocation of the net income for purposes of taxation was in full accord with the statute.

Therefore, the only defense left to the complaining taxpayer is the assertion that the statutes are unconstitutional. The attack upon the statutes is based upon the contention that they are so "arbitrary and unreasonable as to be repugnant to the commerce clause and the Fourteenth Amendment to the Federal Constitution."

The taxing statute is as follows: "Every corporation organized under the laws of this State shall pay annually an income tax, equivalent to four per cent of the entire net income as herein defined, received by such corporation during the income year; and every foreign corporation doing business in this State shall pay annually an income tax equivalent to four per cent of a proportion of its entire income to be determined according to the following rules:

"(a) In case of a company other than companies mentioned in the next succeeding section, deriving profits principally from the ownership, sale or rental of real estate or from the manufacture, purchase, sale of, trading in, or use of tangible property, such proportion of its entire net income as the fair cash value of its real estate and tangible personal property in this State on the date of the close of the fiscal year of such company in the income year is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deductions on account of encumbrances thereon.

"(b) In case of a corporation deriving profits principally from the holding or sale of intangible property, such proportion as its gross receipts in this State for the year ended on the date of the close of its fiscal year next preceding is to its gross receipts for such year within and without the State.

"(c) The words 'tangible personal property' shall be taken to mean corporeal personal property, such as machinery, tools, implements, goods, wares and merchandise and shall not be taken to mean money deposits in bank, shares of stock, bonds, notes, credits or evidence of an interest in property and evidences of debt."

An examination of the statute discloses that the "fair cash value" of the real estate and tangible personal property of the taxpayer in this State, is the numerator, and the "fair cash value" of all real estate and tangible property owned by the taxpayer is the denominator of a fraction, used by the Commissioner of Revenue in measuring and determining the amount of tax on net income due the State of North Carolina. Obviously, changes in either the numerator or denominator, the other remaining constant, would affect the value of the fraction and consequently the amount of collectible revenue. Moreover, by express provision "tangible personal property" is so defined as to exclude bank deposits, shares of stock, bonds, notes, credits or evidence of an interest in property and evidences of debt.

This method of measuring the tax on net income has been approved by the Supreme Court of the United States in the case of *Underwood Typewriter Co. v. Chamberlain,* 254 U. S., 113. The principles of law announced therein have been approved in subsequent decisions of that Court, notably: *Bass, Ratcliff & Gretton v. State Tax Commission,* 266

U. S., 271; *National Leather Co. v. Mass.*, 279 U. S., 413; *International Shoe Co. v. Shartel,* 279 U. S., 429. Furthermore, the pertinent portion of section 22 of the Connecticut statute, construed in the *Underwood case, supra,* is substantially identical with ours.

Manifestly, the North Carolina statute is not unconstitutional upon its face. It applies equally to both domestic and foreign corporations. It taxes net income only. It does not undertake either in express terms or by implication to impose a burden upon property not subject to the jurisdiction of this State. It is an accepted principle of the law of taxation that "property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed upon the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchise within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly therein), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes." *U. S. Glue Co. v. Oak Creek,* 247 U. S., 321. In the same case the Supreme Court of the United States, discussing an income tax, said: "Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." The same principle was stated in *Atlantic Coast Line v. Doughton,* 262 U. S., 413, in these words: "That a state may, consistently with the Federal Constitution, impose a tax upon the net income of property, as distinguished from the net income of him who owns or operates it, although the property is used in interstate commerce, was settled in *Shaffer v. Carter,* 252 U. S., 37."

The petitioning taxpayer apparently conceding in its brief that the statute is constitutional upon its face, contends that the execution thereof and the application thereof to its business works out an unreasonable and highly arbitrary result and thus effects a denial of its constitutional rights. In order to establish this proposition certain evidence was introduced in the trial court. This evidence tended to show that the petitioner was incorporated in the State of New York in 1901 and is engaged in

the business of tanning, manufacturing and selling belting and other heavy leathers. Many years prior to 1923 it located a manufacturing plant at Asheville, North Carolina, and after this plant was in full operation dismantled and abandoned all plants which it had heretofore operated in different states of the Union. The business is conducted upon both wholesale and retail plans. The wholesale part of the business consists in selling certain portions of the hide to shoe manufacturers and others in carload lots. The retail part of the business consists in cutting the hide into innumerable pieces, finishing it in various ways and manners and selling it in less than carload lots. In order to facilitate sales a warehouse is maintained in New York from which shipments are made of stock on hand to various customers. The tannery at Asheville is used as the manufacturing plant and a supply house, and when the quantity or quality of merchandise required by a customer is not on hand in the New York warehouse a requisition is sent to the plant at Asheville to ship to the New York warehouse or direct to the customer. The sales office is located in New York and the salesmen report to that office. Sales are made throughout this country and in Canada and Continental Europe. Some sales are also made in North Carolina. Certain finishing work is done in New York. The evidence further tended to show that "between forty and fifty per cent of the output of the plant in Asheville is shipped from the Asheville tannery to New York. The other sixty per cent is shipped direct on orders from New York. . . . Shipment is made direct from Asheville to the customer."

The petitioner also offered evidence to the effect that the income from the business was derived from three sources, to wit: (1) buying profit; (2) manufacturing profit; (3) selling profit. It contends that buying profit resulted from unusual skill and efficiency in taking advantage of fluctuations of the hide market; that manufacturing profit was based upon the difference between the cost of tanning done by contract and the actual cost thereof when done by the petitioner at its own plant in Asheville, and that selling profit resulted from the method of cutting the leather into small parts so as to meet the needs of a given customer.

Without burdening this opinion with detailed compilations set out in the record, the evidence offered by the petitioner tends to show that for the years 1923, 1924, 1925, and 1926, the average income having its source in the manufacturing and tanning operations within the State of North Carolina was seventeen per cent.

Upon such evidence the petitioner earnestly contends that the taxing statute of North Carolina in its operation and application is unreasonable and arbitrary, and hence repugnant to the Federal Constitution.

The fallacy of this conclusion lies in the fact that the petitioner undertakes to split into independent sources, income which the record dis-

closes was created and produced by a single business enterprise. Hides were bought for the purpose of being tanned and manufactured into leather at Asheville, North Carolina, and this product was to be shipped from the plant and sold and distributed from New York to the customer. The petitioner was not exclusively a hide dealer or a mere tanner or a leather salesman. It was a manufacturer and seller of leather goods, involving the purchase of raw material and the working up of that raw material into acceptable commercial forms, for the ultimate purpose of selling the finished product for a profit. Therefore, the buying, manufacturing and selling were component parts of a single unit. The property in North Carolina is the hub from which the spokes of the entire wheel radiate to the outer rim.

Manifestly, by virtue of the intimate and inseparable relation between the various departments of the business it would be impossible for the Legislature to allocate with mathematical accuracy or precision the profits earned within this State. This idea was expressed in the *Underwood case, supra,* as follows: "The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other states. In this is was typical of a large part of the manufacturing business conducted in the State. The Legislature in attempting to put upon this business its fair share of the burden of taxation was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the State." It is true that, in the *Underwood case* the Supreme Court of the United States, quoting from the Connecticut Court, asserted that the burden was upon the taxpayer to show that the amount of tax assessed by the State of Connecticut was not reasonably attributable to the manufacturing operations within the State. Certainly, this could not be shown, as the petitioner has sought to do in this case, by splitting up a single business into component parts and dividing the indivisible in order to reduce the tax. Indeed, in the *Underwood case* the taxpayer attempted to show that more than a million and a quarter of its net profits was received in other states and only a negligible part in Connecticut, and from such fact reasoned that a tax assessment of forty-seven per cent was unreasonable and arbitrary. The Court, however, remarked: "But this showing wholly fails to sustain the objection."

Again in *Bass, Ratcliff & Gretton v. State Tax Commission,* 266 U. S., 271, the Court said: "So in the present case we are of opinion that, as the company carried on the unitary business of manufacturing and selling ale, in which its profits were earned by a series of transac-

tions, beginning with the manufacture in England and ending in sales in New York and other places—the process of manufacturing resulting in no profits until it ends in sales—the state was justified in attributing to New York a just proportion of the profits earned by the company from such unitary business." *Adams Exp. Co. v. Ohio,* 165 U. S., 194.

The trial judge struck out all the evidence offered by the petitioner upon the ground that it was immaterial. This ruling, as we interpret the law, is correct for the reason that the tax was computed in accordance with a statutory method which has been approved by the court of supreme authority. Furthermore, it is admitted in the record that the method was properly applied to the net income of the petitioner. Hence, if a proper statutory method for measuring a tax has been properly applied, that ought to end the case. But conceding that the evidence was competent, it shows beyond doubt that the petitioner was conducting a unitary business as contemplated and defined by the courts of final jurisdiction, and, if so, it is not permissible to lop off certain elements of the business constituting a single unit, in order to place the income beyond the taxing jurisdiction of this State.

The Commissioner of Revenue contends that at all events the portions of tax paid by the petitioner voluntarily and without objection or compulsion cannot be recovered even though the tax be levied unlawfully. This contention is sound and is supported by authority. *Blackwell v. Gastonia,* 181 N. C., 378, 107 S. E., 218; *Mfg. Co. v. Commissioners,* 196 N. C., 744, 147 S. E., 284; *Henrietta Mills v. Rutherford,* 50 Supreme Court Reporter, 270.

We are of the opinion and so hold that the taxing statutes are constitutional and therefore do not invade the domain of the commerce clause or the Fourteenth Amendment of the Federal Constitution. Neither is the execution or practical operation of the statutes unreasonable or arbitrary, and the judgment of the Superior Court of Buncombe County is

Affirmed.