LAWRENCE *v.* MISSISSIPPI STATE TAX COMMISSION *et al.*

(In Banc. Nov. 9, 1931.)

[137 So. 503. No. 29404.]

Watkins, Watkins & Eager, of Jackson, and Stevens & Heidelberg, of Hattiesburg, for appellant.

340

342

**W. A. Scott, Jr.**, Assistant Attorney-General, for the appellees.

**Wm. A. Shipman,** Assistant Attorney-General, for appellees.

Argued orally by **W. H. Watkins**, for appellant, and by **W. A. Scott, Jr.**, for appellee.

**Ethridge, J.**, delivered the opinion of the court.

S. B. Lawrence, the appellant, is a resident of Hinds county, Mississippi, engaged in constructing and maintaining public roads and highways in the state of Mississippi and in other states. In the year 1929 he went into the state of Tennessee, entered into and completed contracts for the construction of certain highways, which contracts were entered into and entirely completed in the state of Tennessee. He collected from that state the money accruing to him by reason of the performance of said contracts. His net income was such that, if his income, earned and collected entirely beyond the limits of the state of Mississippi, in the state of Tennessee, were subject to taxation, he would be owing the state of Mississippi the sum of two thousand two hundred eighty-eight dollars and thirty-one cents.

The Mississippi state tax commission, in accordance with the provisions of the Mississippi statutes on the subject, took steps to assess him with the income tax imposed by law. The appellant appeared before the state tax commission, and objected to the assessment of the said income tax, contending that he is not subject to the income tax upon money earned outside of the state of Mississippi in the contract above referred to; that the

state could not, under the fourteenth section of the bill of rights of the state of Mississippi, or the Fourteenth Amendment to the Constitution of the United States, impose liability for income earned as result of performing labor or pursuing an occupation beyond the limits of the state, and in the limits of another state.

On the hearing, the tax commission assessed him with an income tax on the income earned out of the state. The appellant thereupon filed a bill in chancery in accordance with section 5057, Code of 1930, to review the assessment. He contended that chapter 32, Extraordinary Session Mississippi Legislature 1928, did not impose liability for income earned wholly out of the state of Mississippi, that, if the statute should be so construed and enforced as to impose liability upon him for such income, then the statute would violate the above sections of the Constitution. It was alleged that section 11, chapter 132, Laws of 1924, as amended by chapter 32, Laws of 1928, Extraordinary Session, violates the above sections of the Constitution because it does not apply to incomes earned by domestic corporations wholly outside of the state of Mississippi. .We quote from complainant as follows: "Complainant alleges and avers the fact to be: That chapter 32, Mississippi Legislature of 1928, Extraordinary Session, as construed and enforced, violates the Fourteenth Amendment to the Constitution of the United States in that the same deprives the petitioner of his property without due process of law, and denies to him the equal protection of the law; for that, in the imposition of liability for income tax for the year 1929, said act arbitrarily discriminated against this petitioner. The petitioner during the year 1929, was engaged in the business of constructing public roads, streets and highways in the state of Mississippi, Louisiana and Tennessee. That during said years, and during all subsequent years, he was in active competition with domestic corporations organized under the laws of

the state of Mississippi, and domiciled therein, which corporations were likewise engaged in the business of building roads, highways and streets in the states of Louisiana, Mississippi and Tennessee, and that there was during said years, prior thereto, and at all times since, a large number of domestic corporations in the state of Mississippi, engaged in carrying on business and transacting business in said three states aforementioned, as well as other states where said domestic corporations had places of manufacture, production and/or places of merchandise.''

He further alleged that other such domestic corporations were not assessed with, or held to be liable to, an income tax earned beyond the limits of the state of Mississippi by such domestic corporations, and that such corporations have not paid such taxes to the state of Mississippi, but have been adjudged by the Mississippi state tax commission to be free from liability therefor, and that no demand had been made therefor, but that such income earned from without the state has been intentionally, continuously, and systematically deducted from the gross income of domestic corporations.

It will be seen from an examination of chapter 32, Laws of state of Mississippi, Extraordinary Session of 1928, amending section 11 of chapter 132, Laws of 1924, that for the purpose of this act, except as otherwise provided for nonresidents, the term ''gross income'' does not include income of a domestic corporation when earned from sources outside this state, and such sources shall be defined to mean all manufacture or production and places of merchandising.

The chancery court held the appellant liable for the tax, and rendered judgment against him, from which this appeal is prosecuted.

If chapter 32 of Laws of state Mississippi, Extraordinary Session 1928, is constitutional, of course the appellant is subject to the tax; if such act is unconstitutional,

then section 11 of chapter 132 Laws of 1924, would remain in force as though the amendment had not been made, and under the said chapter both individuals and domestic corporations would be subject to income tax on the income earned outside of the state as well as income earned within the state. State v. Gulf, M. & N. R. Co., 138 Miss. 70, 104 So. 689, and authorities therein cited. It is therefore unnecessary to decide whether chapter 32, Laws of Mississippi, Extraordinary Session 1928, is constitutional or not, because from either viewpoint the same conclusion and judgment would be reached; that is to say, in taking either view the appellant would be liable for the tax. See Miller, State Tax Collector, v. Columbus & G. Ry. Co., 154 Miss. 317, 122 So. 366, at page 324 of the Mississippi Report (122 So. 367), where the court said: "In event a railroad discriminated against by this statute should challenge the validity thereof on the ground that it is arbitrarily discriminated against, it would not be necessary for the court to decide the question, for so to do would profit the complaining railroad nothing; for, if the statute should be held void, chapter 282, Laws of 1914, would remain in full force and effect, under which the complaining railroad's tax would be three hundred fifty dollars per mile, the exact amount imposed by chapter 259, Laws of 1926; or, if the proviso only of chapter 259, Laws of 1926, is void, the same result would follow." See, also, Moore v. Tunica County, 143 Miss. 821, 107 So. 659; Claiborne County v. Morehead, 145 Miss. 867, 111 So. 372; Buford v. State, 146 Miss. 66, 111 So. 850; Miller v. Tucker, 142 Miss. 146, 105 So. 774; Pearl River County v. Lacey Lumber Co., 124 Miss. 85, 86 So. 755; Adams v. Standard Oil Co. of Ky., 97 Miss. 879, 53 So. 692; American Express Co. v. Beer, 107 Miss. 528, 65 So. 575, L. R. A. 1918B, 446, Ann. Cas. 1916D, 127.

The judgment of the court below must therefore be affirmed.

Affirmed.

**Griffith, J.,** delivered a dissenting opinion.

The primary point involved in this case may be briefly stated: The income tax laws of the state impose upon a resident natural person a tax upon his income whether earned within or without state, and at the same time excludes from the income tax of a domestic corporation all income produced beyond the borders of the state; and the question is whether thereby a discriminatory tax is levied against a resident natural person in respect to his said outside income.

The formula, which has been repeated over and over, by which to determine the validity vel non of making a tax-taking difference between those subject thereto and of a classification for that difference, is that the difference or classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989; Lowry v. City of Clarksdale, 154 Miss. 155, 170, 122 So. 195. That a greater burden cannot be laid on an individual than upon a domestic corporation, similarly situated in respect to the burden so imposed, would seem obvious, and it has been expressly so held in Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 74 L. Ed. 483, as well as other cases, state and federal.

As said in Crescent Mfg. Co. v. Tax Commission, 129 S. C. 480, 485, 124 S. E. 761, 762: "The income tax is primarily a subjective tax imposing personal liability upon the recipient of the income. It proceeds fundamentally upon the theory that all residents and citizens of the state, whether natural persons or domestic cor-

porations, should contribute to the public treasury in proportion to ability to pay, measured by the amount of net income from all sources.'' But our law, disregarding that fundamental theory, enacts that, although the domestic corporation has an equal ability to pay out of its income derived from without the state as compared to a resident natural person deriving exactly the same income and in exactly the same business from without the state, the domestic corporation is relieved of the tax on that outside income, while the resident natural person must pay on identically that same thing. It had as well be said that an individual shall pay while a partnership shall be exempt, or that those who occupy, and conduct their operations in, wooden buildings, shall pay, while those who conduct their business in brick or stone buildings shall be exempt.

But it seems to me to be unnecessary to pursue the discussion of a proposition which reveals its discriminatory character upon its very face and as plainly so as any argument or review at length would disclose. The majority opinion does not undertake to intimate or hold to the contrary. It simply declines to decide the question, and asserts as a justification therefor that, even if the discrimination in fact exists, this would not aid appellant, the resident natural person, for the reason that the discriminatory exemption, so called, in favor of the domestic corporation, would be void, and might be stricken from the law, thereby leaving that portion of the laws which taxes the individual to stand; and to sustain its position the majority cites a number of cases decided by this court, not one of which upon its facts goes, as I submit, to the deeper question which is here before the court.

The larger number of the cases cited by the majority will be found to be cases dealing with amendments which within themselves are void, and this without regard to the original law which is sought to be amended. These

cases, of course, have no pertinent application here, as will be later herein mentioned. The two or three other cases cited by the majority will be found to fall upon an analysis of their facts, within two well-recognized rules which nobody disputes; first, it is a well-recognized rule that, if the objectionable parts of a statute are separable, in matter of legislative intent, from the remainder thereof, the objectionable part may be stricken out, and the statute will be enforced in those parts that are constitutional. There are many cases where the same statute, or statutes amendatory, although dealing with the same general subject, deal also with substantially separate divisions or items under that general subject; these separate divisions or items having no constitutional or other essential connection one with another, in which cases the objectionable items may be eliminated and the remainder enforced. And, second, where the objectionable portion is of such inferior or minor importance in relation to the dominant purpose and scope of the statute that it can be safely assumed that the Legislature would have passed the statute omitting the objectionable portion, then the court can accomplish that purpose by striking out the said objectionable minor or inferior portion. This is pointed out in Adams v. Standard Oil Co., 97 Miss. 879, 907, 53 So. 692. These principles are summarized in Cooley's Const. Lim. (8 Ed.) 364, as follows: "When a part of a statute is unconstitutional, that fact does not compel the courts to declare the remainder void, unless the unconstitutional part is of such import that the other parts of the statute, if sustained without it, would cause results not contemplated or desired by the Legislature. The question to be determined is whether the obnoxious part is an inducement to the whole act or whether it is a mere incident thereto."

But here we have, not two substantially separate divisions or items under the same general subject, but what is substantially one item or division; namely, the item

of the income tax earned beyond the limits of the state, and the point is that this one item or division is made to bear differently on two different taxpayers, who in respect to the object of the legislation are similarly situated. Because this item is made thus to bear differently on those similarly situated, it cannot for that reason be said that this makes different items of them, for, if this were true, every case of discrimination could be evaded of relief by a similar mode of construction, and the constitutional guaranty of equal protection would be, as to tax matters, reduced to a mere scrap of paper. And, even if the conception could be entertained that, because the item is made to bear differently upon different taxpayers, although similarly situated, there thus arises in a sense two separate items, this does not aid the question here, because as to that question the two have here, in a constitutional sense, an inseparable connection each with the other, for the fact is that it is the inescapable attrition of one upon the other that produces or gives rise to the very constitutional question we have here in hand.

Nor can it be said that the provision with reference to domestic corporations is a mere incidental or minor or inferior feature of the enactment as compared with the provision imposing the tax on a resident natural person. On the contrary, there is the more reason to believe —in view of the fact that to impose the tax on domestic corporation on outside incomes would drive many, if not most, of the larger of the domestic corporations to go to other states, to the great loss of the treasury of the state—that the Legislature, when this matter was brought to their attention in 1928, would probably have enacted the amendment of 1928, excluding the outside incomes of domestic corporations, and at the same time would have excluded also the outside incomes of resident natural persons, if at the time the inadmissibility of

any discrimination in ths matter had been known to the Legislature. Whether, if they had so known, they would have enacted that all incomes produced outside of the state would be excluded, or, on the other hand, they would have included such outside incomes both as to resident natural persons and domestic corporations, the court has no means of determining, and, unless the court can so determine, there is no legitimate power in the court to strike out that which is the last deliberate expression of the legislative will on the subject. Com. v. Hana, 195 Mass. 262, 81 N. E. 149, 11 L. R. A. (N. S.) 799, 122 Am. St. Rep. 251, 11 Ann. Cas. 514, and see the text and the numerous cases noted in 6 R. C. L. 121-130.

The true rule is tersely stated in Howard v. Illinois Cent. R. Co., 207 U. S. 463, 28 S. Ct. 141, 146, 52 L. Ed. 297, 310, as follows: "Even in a case where legal provisions may be severed from those which are illegal, in order to save, the rule applies only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated." Or as was said in Pollock v. Farmers' L. & T. Co., 158 U. S. 601, 15 S. Ct. 912, 920, 39 L. Ed. 1108, 1125, wherein it was urged that an unconstitutional exception in a statute should be disregarded: "The insuperable difficulty with the application of that principle of construction to the present instance is that . . . it confers upon the statute a positive operation beyond the legislative intent, and beyond what any one can say it would have enacted, in view of the illegality of the exceptions." And no occasion has more strikingly illustrated the principle for which I am contending than the notable case involving the grandfather amendment to the Oklahoma Constitution prescribing a literacy test for electors, but further providing that persons who on January 1, 1866, were entitled to vote and the lineal descendants of those persons should not be subject to the test. The court,

in holding that the proviso was discriminatory and rested upon no sustainable differentiating reason, was urged to disregard the proviso by striking it out, and thereby allow the literacy test to stand without the proviso, but the court refused to take that course, for the reason that it could not be said whether, if the proviso were eliminated, the literacy test as thus excised would have been enacted, and therefore the court struck down the literacy test itself. So exactly in this case—instead of an intimation that the particular provision excluding the outside incomes of domestic corporations might be stricken down, the entire item of the law in respect to incomes earned outside the state should be stricken, so far as those outside incomes are concerned, whether earned by individuals or corporations. See, also, Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679, 692.

This latter brings the more distinctly into view this further inescapable inquiry: If the provisions mentioned are severable so as to become two provisions, which is it of the two conflicting provisions in this case that is the objectionable portion? Admittedly the Legislature had the power to enact that the income of a domestic corporation produced outside of the state should not be taxable in this state, so that clearly that enactment is not unconstitutional within itself. How then is that enactment to be said to be objectionable so as to be stricken down? It is said that it is objectionable and may be stricken because by its existence there is caused a discrimination against a resident natural person, who by the requirement of the income tax law is taxed as to his income produced outside of the state. But is it not this latter portion, which imposes the discriminatory tax, that is the objectionable portion? This latter is the active agent that is seeking to impose the discriminatory tax, and is therefore the offending portion, not

the portion which does not seek to impose the tax and is thus wholly inactive and inoffensive.

And, as against the views which I am endeavoring to maintain, nothing is gained by the argument that, because the original income tax law of 1924 taxed the outside incomes of both of resident natural persons and of domestic corporations, and because it is the amendment of 1928 to that law which excludes the outside incomes of domestic corporations, and which has produced the discrimination herein complained of, thereby importing into the statute an unconstitutional equation, therefore the amendment is the particular element that must be stricken, and this without regard to the validity of the amendment within itself and without regard to the importance of the amendment as related or as compared to that with which it comes into conflict. Certainly it is the rule that a valid statute cannot be amended by an unconstitutional amendment, when the amendment within itself is unconstitutional, as was the case, for instance, in Buford v. State, 146 Miss. 66, 111 So. 850; Moore v. Tunica County, 143 Miss. 829, 107 So. 659, and in most of the others cited by the majority. In such cases the amendment falls of its own weight, not because of its constitutional relation, with other provisions of the statute amended. But I repeat that the amendment here is entirely constitutional within itself, and, when its conflict with the provision taxing outside incomes of resident natural persons comes into review on the question which of the two must go down, then it is a further question of legislative intention, and this reduces it to the further question as to the relative or comparative importance of the one provision against the other, and, unless the provision brought in by the amendment is of such inferior importance as compared with the particular remaining provision with which it comes into conflict, that the court can see and can say that the Legislature, if it had at the time known of the inadmissibility

of the conflict on constitutional grounds, would not have enacted the amendment, then the court has no authority to strike the amendment down, nor adjudicate the case in hand upon any hypothesis that it may simply be disregarded.

When an amendment is made to a statute, it is as much a part thereof as if originally written therein, and the entire statute is brought forward as if re-enacted in its entirety on the date of the passage of the amendment. Suppose the amendment here had enacted that no incomes produced outside of the state by those engaged in agriculture, in horticulture, in manufacturing, in mercantile pursuits whether wholesale or retail, in lumbering, in road building, and in transportation, should be included in their income tax returns thereby excluding ninety per cent of those in the state who earn any incomes outside of the state, would the court say that, because of the discrimination against the ten per cent who do not come within the excluded classes, the whole amendment must be stricken, and all incomes derived beyond the state should be taxable, in clear contravention of the preponderant legislative intent as expressed on the subject at the time of its reconsideration when the amendment was enacted? This question answers itself. The court has no legitimate legislative powers, and cannot convert itself into a legislative body and produce as statutory law by judicial decision that which the Legislature would not or probably would not at the time have allowed; and thus is demonstrated that it is not the mere technical fact that the matter is contained in an amendment valid in itself, but the controlling issue is as to the relative importance of the matter made a part of the statute by the amendment, and as to what the Legislature would have done at the time if the inadmissibility of the discrimination had been in mind. Certainly, in this respect, and in every respect germane to the ques-

tion here before us, amendments stand upon equal, if not upon higher, ground than do exceptions or provisos, as to which latter direct and controlling authorities upon the exact point have already been cited. See, also, Lewis' Sutherland Statutory Construction (2 Ed.) sec-. tions 305, 306.

But I will not further elaborate upon the discussion. I desire, having outlined the grounds which are regarded by me as controlling here, only to add the following observations touching the attitude in which the court is left by the result reached by the judgment of the majority opinion, which, as I submit, has been merely to scratch the surface, has been to float down the stream of least resistance, and has been not to face the question before us:

Now in what attitude exactly does the majority opinion place this court in respect to a mandatory provision of the supreme law of the land that ''no state shall enforce any law which shall deny to any person within its jurisdiction the equal protection of laws?'' That the laws of this state in the respect mentioned do deny to appellant the equal protection of the law is clear, and, as already stated, the majority opinion does not undertake to assert to the contrary. But here is the court's exact attitude: If the state tax collector or the Attorney General were to sue domestic corporations for their outside income taxes on the ground that the income tax law as amended makes an unconstitutional discrimination in favor of domestic corporations, and that for that reason the exclusion of the outside income of domestic corporations is void, the court would answer him as was recently held by the Supreme Court of the United States in Columbus & G. Ry. Co. v. Miller, 283 U. S. 96, 51 S. Ct. 392, 394, 75 L. Ed. 861, a case appealed from this court, that ''the constitutional guaranty does not extend to the mere interest of an official, as such,

who has not been . . . denied the equal protection of the laws,'' and his suit would be dismissed without deciding the merits of the question; and now when, on the other hand, the individual who is discriminated a-gainst appeals to the court, the answer returned to him is that the court will still not decide the merits of the question, for, if the law be discriminatory, it is not void as to him whatever it might be as to domestic corporations, so that he has no sustainable complaint; and thus by whatever door the court is approached the court declines to act; and the discrimination goes on from year to year, and the Constitution continues to be violated, and will be in the future as in the past. When the state is proceeding to the enforcement of a law which denies to any person within its jursdiction the equal protection of the laws, it is upon the courts, when appealed to, that the power and mandatory constitutional duty is imposed, to prevent the enforcement of that law in so far as it effectuates the obnoxious discrimination; but, with deference, the course of the court here is to the opposite effect, and is, in substance, by its nonaction to sanction the unconstitutional discrimination and continued enforcement thereof. Thus viewing the matter in its ultimate effect, I must in response to my sense of constitutional obligation respectfully decline to join in the course now taken by the court, and must avail of the privilege to record my dissent.

McGowen, J., joins in dissenting opinion.