STATE OF NORTH CAROLINA ON RELATION OF A. J. MAXWELL, COMMISSIONER OF REVENUE, v. KENT-COFFEY MANUFACTURING COMPANY.

(Filed 15 March, 1933.)

1. **Taxation C g—Locus of sales of foreign corporation operating manufacturing plant here is not determinative in allocating its income.**

   The income of a corporation from a unitary business may be allocated for the purpose of assessing income taxes against it to different states in which its activities are carried on, but such allocation must be based upon apportionment of productive capital, investment or employment, or some logical reference to the production of income, and the locus of its sales may not alone be made the basis of such distinction, the income from its sales being determined in relation to its capital, organization or efforts producing the sales, and where our State statute prescribes allocation in accordance with the corporation's capital outlay the statutory method will be deemed constitutional, with the burden on the corporation to show by evidence any outside factors rendering the application of the statutory method unconstitutional.

2. **Same—Locus of capital stock of foreign corporation is immaterial in allocating its income taxable by the State.**

   An income tax assessed against a corporation is not a tax upon its capital stock or franchise, and may be imposed in addition to a property tax, and in the allocation of its taxable income the locus of its capital stock need not be considered.

3. **Taxation A c—**

   The provision of Art. V, sec. 3, of our State Constitution that property shall be taxed according to its true value in money does not apply to income taxes.

4. **Taxation A h—Tax on net income of corporation doing interstate business is not a burden on interstate commerce.**

   An income tax on a corporation doing an interstate business is not a burden on interstate commerce, such tax being a tax on net income allocated to the State in accordance with a proper apportionment of the corporation's operations and business in this State, and the State may set up the formula for determining the allocation of income.

**5. Statutes A e—Presumption in favor of constitutionality of statutes applies to taxing statutes.**

Ordinarily, the constitutionality of a taxing statute is to be determined upon its inspection, and those matters of which the court may take judicial notice, with the burden on the taxpayer to show that it is unconstitutional in its application to him, the presumption being in favor of constitutionality.

**6. Taxation C f — Burden is on appealing corporation to show that statutory assessment of income tax against it is unconstitutional.**

Where the Commissioner of Revenue has assessed an income tax against a foreign corporation operating a manufacturing plant in this State in accordance with the provisions of secs. 311(a), (c), of the Revenue Act of 1929, allocating its income taxable by the State in accordance with the ratio between its tangible property within the State and its total tangible property without regard to its intangible property, consisting of capital stock, cash, accounts receivable, etc., the Commissioner's assessment will be upheld by the courts upon appeal where the corporation has failed to show that such method of allocation is unconstitutional in its application to the corporation, and the corporation's showing that its intangible property was not included in determining the ratio between its property within and without the State is not sufficient for this purpose, such intangible property being considered as the result and profits of its manufacturing operations in this State in the absence of proof that it resulted from operations without the State.

STACY, C. J., concurring.

APPEAL by plaintiff from *McElroy, J.,* at May Term, 1932, of CALDWELL. Reversed.

The following judgment was rendered by the court below: "In this cause, pursuant to the authority granted to counsel for Kent-Coffey Manufacturing Company, at the May Term, 1932, of this court, the defendant above named was granted permission to file its amendment to the petition by alleging that the tax charged was and is obnoxious to the provisions of the Interstate Commerce Clause of the United States Constitution.

And a hearing in said action having been had by consent of the parties plaintiff and defendant, at a regular term of the Burke Superior Court on 13 May, 1932, the parties having theretofore agreed to waive all technicalities, and that hearings might be had outside of the county in which the controversy was pending and having agreed that all such orders could be made at Burke Superior Court as fully as they could have been made at Caldwell Superior Court.

And the matter having been heard upon agreed facts as set forth in the petition and the exhibits thereto, and upon the whole record certified from the office of the Commissioner of Revenue, and the subsequent record made in this Court.

It is now considered and adjudged by the court that the basis of taxation adopted by the Commissioner of Revenue is arbitrary and unreasonable and in conflict with the Interstate Commerce Clause and the Fourteenth Amendment of the United States Constitution; and that the proper method of taxation would be to allot as income to the State of North Carolina such proportionate part of its entire income as the total of all of its tangible property in North Carolina bears to the total, tangible and intangible, properties in North Carolina and elsewhere.

It is thereupon considered and adjudged that the Kent-Coffey Manufacturing Company have and recover of the State of North Carolina on the relation of A. J. Maxwell, Commissioner of Revenue, the sum of $4,295.27, as shown from the report of Jack B. Phelps, acting chief income tax division, together with interest on said sum from 9 August, 1930, until paid."

The plaintiff excepted and assigned error to the judgment as signed and appealed to the Supreme Court. The necessary facts will be stated in the opinion.

*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Siler for the State.*

*Mark Squires, L. H. Wall, Houston D. Squires and W. C. Erwin for defendant.*

CLARKSON, J. The defendant paid to plaintiff the tax assessed against it—$4,295.27—under protest, excepted to the ruling of the Commissioner of Revenue, and appealed to the Superior Court of Caldwell County, waiving jury trial. Public Laws 1929, chap. 345, sec. 341.

The sole question involved on this appeal is: Was the basis of taxation adopted by the Commissioner of Revenue arbitrary and unreasonable and in conflict with the Interstate Commerce Clause and the Fourteenth Amendment of the United States Constitution? We think not.

This is an action to review an assessment of income taxes against the defendant Kent-Coffey Manufacturing Company, made by the Commissioner of Revenue.

The appellee, Kent-Coffey Manufacturing Company, is a Delaware corporation carrying on a manufacturing business in Caldwell County, North Carolina. All of its manufacturing is done in this State.

The appellee filed its income tax return for the year 1929, showing therein a net income of $230,138.76 for the taxable year. In filing its return, it allocated to North Carolina 58.538 per cent of its net income and upon that allocation paid to the Commissioner of Revenue, for the State, an income tax of $6,062.34. In reaching this result, it used the

value of its tangible property in North Carolina and the value of all of its property, tangible and intangible, both within and without the State.

When the return of the taxpayer came before the Commissioner of Revenue for review, he assessed an additional tax against the appellee which, with interest, amounted to $4,295.27. It is this latter sum, and that only, which is in controversy in this action.

The cause was certified by the Commissioner of Revenue to the Superior Court of Caldwell County and there heard at May Term, 1932, the court holding "that the proper method of taxation would be to allot as income to the State of North Carolina such proportionate part of its entire income as the total of all of its tangible property in North Carolina bears to the total, tangible and intangible, properties in North Carolina and elsewhere."

The court thereupon adjudged that Kent-Coffey Manufacturing Company recover of the State the sum of $4,295.27, the amount in controversy.

The reassessment made by the Commissioner of Revenue was based upon the language of section 311(a), chapter 345, the Revenue Act of 1929. The business of the defendant comes within the type of that described in that section. The allocation formula set up in that section for the apportionment of net income to this State is "such proportion of its entire net income as the fair cash value of its real estate and tangible personal property in this State on the date of the close of the fiscal year of such company in the income year is to the fair cash value of its entire real estate and tangible personal property then owned by it, with no deductions on account of encumbrances thereon."

Section 311(c) of the Revenue Act of 1929, defines "tangible personal property" as follows: "The words 'tangible personal property, shall be taken to mean corporeal personal property, such as machinery, tools, implements, goods, wares and merchandise, and shall not be taken to mean money deposits in bank, shares of stock, bonds, notes, credits, or evidence of an interest in property and evidences of debt."

The Commissioner of Revenue found, and the agreed facts in the record show, that the appellee owned real estate and tangible personal property, both within and without the State, of the fair cash value of $555,418.61, of which, such property of the value of $550,961.48 was situated in North Carolina. Applying the statute to the facts as so ascertained, the Commissioner of Revenue found that 99.2 per cent of the net income of the defendant was apportionable to North Carolina. The additional tax of $4,295.27 was assessed by the Commissioner and paid by the appellee under protest. The case comes here by appeal from the judgment of the Superior Court of Caldwell County in the regular way.

In support of its contentions, appellee sets up that it had a paid-up capital stock of $652,500. With respect to this capital stock, its position is stated in its petition as follows: "The said capital stock was employed by your petitioner for the purpose of manufacturing and, as your petitioner is advised and believes, had its situs within the State of its domicile, or the State of Delaware. Petitioner had also reserved and set aside as surplus or working capital $140,354.06; all of which surplus was employed in the business of your petitioner as a manufacturer, and all of which sum had a taxable situs, as your petitioner is informed and believes, in the State of Delaware and not in the State of North Carolina."

Appellee contends that the formula properly applicable to it is the relation of its tangible property in North Carolina to all of its property, tangible and intangible, both within and without the State. These intangibles consist of the following items:

| | |
|---|---:|
| Cash | $ 61,349.91 |
| Accounts receivable | 203,933.08 |
| Notes receivable | 70,821.10 |
| Stock in other corporations | 13,100.00 |
| Prepaid expense | 36,585.04 |
| Making a total of | $385,789.13 |

Of these items, the cash is made up of deposits of $41,220 in banks without the State and deposits of $20,121.91 in banks in North Carolina. The inclusion of these bank deposits in North Carolina is evidently upon the theory that such intangibles have their situs within the domiciliary state of the corporation upon the maxim, *"mobilia sequuntur personam."*

It is also set up in the record, as a part of the appellee's petition to the Commissioner of Revenue, upon which this case is being reviewed, that "as a statement of fact rather than a contention for the allocation of petitioner's taxes, the sales for the period of the report made without the State were the sum of $1,545,485.95, or 99.8 per centum of the total sales; and within the State the sum of $3,021.13, or 00.2 per centum of the total sales."

It is admitted in the brief for appellee that its business is unitary. That term is simply descriptive, and primarily means that the concern to which it is applied is carrying on one kind of business—a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a

substantial separateness and completeness, such as might be maintained as an independent business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves.

Conceding that a unitary business may produce an income which must be allocated to two or more states in which its activities are carried on, such a business may not be split up arbitrarily and conventionally in applying the tax laws. It would seem to be necessary that there should be some logical reference to the production of income; the distinction should be founded on a corresponding difference in apportionment of productive capital, investment or employment, within the unitary business.

The mere statement of a witness as to the income separately derived from purchase, from manufacture, and from sale, without supporting data, showing the influence of each factor in producing profit, gain or income from the separate operations—such as should be allocated to it independently—is merely an arbitrary guess. The bare fact of sale produces no income. It is merely the act by which the income is captured; the capital, the organization or efforts which produce the sale, are the things to be considered in ascertaining the amount of income to be credited to the sale. Certainly, in a unitary business, we must look further back than to the sale itself, or the activities which actually produce it. The tangible property element of capital outlay is cared for in the tangible property ratio set up by the statute. If there is anything beyond that of sufficient magnitude to affect the constitutionality of the application of this rule, it must be shown in the evidence, the burden resting upon the taxpayer to do so.

But, it is not necessary to apply any of these principles in finding the correct solution of the problem before us. No effort was made in the evidence to break up the business of appellee into the separate or component elements of buying, manufacturing and selling, as was done in the *Hans Rees case,* 199 N. C., 42, 283 U. S., 123, 75 L. Ed., 879.

Appellee is a foreign corporation, but employs its capital in manufacturing in this State. As one part of its case, it relies upon the contention that the whole of its capital stock is located at its home office in Delaware. But the tax here imposed is not one upon the capital stock of the corporation or its franchise; *Petroleum Company v. Bliss,* 43 R. I., 244; *Adams Express Company v. Kentucky,* 166 U. S., 171, 41 L. Ed., 960; *Bank of California v. San Francisco,* 142 Cal., 276, 64 L. R. A., 918.

The tax here in question is one upon income or net profits. That such a tax may be imposed, in addition to that on property, is now too well established to admit of debate. It is now universally regarded as one of the most just methods of apportioning the burdens of government.

The tax on income, imposed by the Revenue Acts of this State, is not a tax on property, within the meaning of the requirement of Constitution, Article V, section 3, that property shall be taxed according to its true value in money. *Tea Company v. Doughton,* 196 N. C., 145, 149; *Clark v. Maxwell,* 197 N. C., 604, 606; *State v. Gulf M. and N. R. Company,* 138 Miss., 70, 104 So., 689; *Ludlow-Saylor Wire Company v. Wollbrinck,* 275 Mo., 339, 205 S. W., 196; *Hattiesburg Gro. Company v. Robertson,* 126 Miss., 34, 88 So., 4, 260 U. S., 710, 67 L. Ed., 475; *Lawrence v. Tax Commission,* 162 Miss., 338, 137 So., 503, 286 U. S., 276, 76 L. Ed., 1102.

As to the general nature of such taxes, see *Doyle v. Mitchell Bros. Company,* 247 U. S., 179, 62 L. Ed., 1054; *Bowers v. Kerbaugh-Empire Company,* 271 U. S., 170, 70 L. Ed., 886.

A state may not impose any tax which results in laying a direct burden upon interstate commerce. But, a state may, in levying a general income tax, include within the taxable status so much of net income derived from interstate commerce as is properly apportionable to operations and business within the State. *U. S. Glue Company v. Oak Creek,* 247 U. S., 321, 62 L. Ed., 1135; *Shaffer v. Carter,* 252 U. S., 37, 64 L. Ed., 445; *Travis v. Yale & Towne Mfg. Company,* 252 U. S., 60, 64 L. Ed., 460.

A tax upon the net income of such corporation is not a burden on interstate commerce, simply because the products of the business are shipped and sold out of the State. The distinction between a tax on gross receipt and a tax on net income is thus stated by *Justice Pitney* in *U. S. Glue Co. v. Oak Creek, supra,* p. 328: "The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude, and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and

general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the Federal Constitution because they happen to be engaged in commerce among the states."

A state may tax the net income of a foreign corporation doing business within its taxing jurisdiction, and may include therein a portion of such net income arising from interstate commerce, properly apportionable to the State. *Underwood Typewriter Co. v. Chamberlain,* 253 U. S., 113, 65 L. Ed., 165; *Bass, Ratcliff and Gratton v. State Tax Commission,* 266 U. S., 271, 69 L. Ed., 282; *Hans Rees Sons v. North Carolina,* 199 N. C., 42, 283 U. S., 123, 75 L. Ed., 879.

A state may set up a formula for determining that portion or net income properly attributable to business within the State, including that from interstate operations. In *Atlantic Coast Line Railroad v. North Carolina,* 262 U. S., 413, 67 L. Ed., 1051, the Supreme Court of the United States sustained allocation of net income to the State based upon an equal mileage proportion of gross operating revenues from interstate business. In *U. S. Glue Co. v. Oak Creek, supra,* it sustained the Wisconsin Act, which apportioned net income upon the relation of gross business and the value of corporeal property within the State to total gross business and the value of such property both within and without the State. In *Underwood Typewriter Co. v. Chamberlain, supra,* it sustained the Connecticut statute identical with that of North Carolina, which used the value of real estate and tangible personal property within the State as ·the numerator and the value of real estate and tangible personal property, both within and without the State, as the denominator of the formulatory fraction.

Ordinarily, the constitutionality of the taxing statute is to be determined upon its inspection, and those matters of which the court may take judicial notice. *Stevenson v. Colgan,* 91 Cal., 649, 14 L. R. A., 459; *People v. Durston,* 119 N. Y., 569; *Hovey v. Foster,* 118 Ind., 502; 1 Cooley Const. Lim. (8 ed.), p. 376, note 3.

The burden rests upon the appellee here, as in all cases where one attacks the constitutionality of a statute in its applicability to him, to overcome that presumption of facts supporting constitutionality which attaches to all legislative acts. *Roberts v. Emmerson,* 271 U. S., 50, 70 L. Ed., 827; *Gorieb v. Fox,* 274 U. S., 603, 71 L. Ed., 1228; *Lawrence v. State Tax Commission, supra.* The appellee relies upon *Hans Rees Son v. North Carolina, supra,* as supporting its contentions. The difference is that in the *Hans Rees case,* evidence was presented breaking up the business into the separate elements of buying, manufacturing and selling. No effort of that kind was made in the instant case.

In the *Underwood Typewriter case,* it appeared that $1,293,643.95 of the net profits of the taxpayer was received from sales of its products in other states, while only $42,942.18 of such net profits was received from sales made in Connecticut, the taxing State. Approximately 99 per centum of the net profits in the *Underwood Typewriter case* arose from sales in other states. By the allocation formula of the statute, 47½ per centum of the net income of the corporation was apportioned to Connecticut. In the instant case, it appears that 98.4 per centum of the products of the taxpayer were sold to customers without the State. By the allocation formula used, identical with that of the Connecticut statute, sustained in the *Underwood Typewriter case,* 99.2 per centum of such income was assigned to North Carolina. The Supreme Court of the United States sustained the constitutionality of the Connecticut statute. In doing so, it said, at p. 121: "The legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It therefore adopted a method of apportionments which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state. 'The plaintiff's argument on this branch of the case,' as stated by the Supreme Court of Errors, 'carries the burden of showing that 47 per cent of its net income is not reasonably attributable, for purposes of taxation, to the manufacture of products from the sale of which 80 per cent of its gross earnings was derived after paying manufacturing costs.' 94 Conn., 47, 108 Atl., 159. The corporation has not even attempted to show this; and, for aught that appears, the percentage of net profits earned in Connecticut may have been much larger than 47 per cent. There is, consequently, nothing in this record to show that the method of apportionment adopted by the state was inherently arbitrary, or that its application to this corporation produced an unreasonable result."

The situation presented in the *Hans Rees case* is entirely different from that in the *Underwood Typewriter case,* or the one now before the Court. In the *Hans Rees case,* the taxpayer did not rely for his defense upon the bare assertion that the act, as applied to it, produced arbitrary and unreasonable results, and was, therefore, unconstitutional, as taking its property without due process of law, or as being a burden upon interstate commerce. By an elaborate series of calculations, it presented to the Court facts upon which it undertook to separate or break up its business into the component elements of buying, manufacturing and selling. These facts and figures tended to show that while only 17 per centum of its net income arose from manufacturing within the State of North Carolina, the allocation formula resulted in taxing 83 per centum of its net income. This evidence was rejected in the court

below, but assumed to be correct in reaching the result in the Supreme Court of the United States.

Always, then, the burden rests upon the taxpayer to show that the allocation formula, set up in the statute, produces such an arbitrary and unreasonable result as to be unconstitutional, as applied to the facts of the particular case. In the *Bass, Ratcliff and Bretton case, supra,* it was said by the Court, p. 283: "It is not shown in the present case, any more than in the *Underwood case,* that this application of the statutory method of apportionment has produced an unreasonable result." The statute on its face carries that presumption of constitutionality which attaches to all legislative acts. That it is constitutional upon its face is sustained by the opinion of the United States Supreme Court, in the *Underwood Typewriter case, supra,* in passing on the statute of the State of Connecticut, identical with the one here in question.

The appellee has not undertaken to sustain the burden of supporting unconstitutionality by presenting evidence or facts sufficient for that purpose. The amount and situs of its capital stock has no relation to the problem. No evidence is presented undertaking to separate the business, the cost or expense thereof, or the income therefrom, into separate units of buying, manufacturing and selling. The larger portion of appellee's intangible assets are without the State. They are evidently the results and profits of the manufacturing processes which took place in North Carolina. They may be held without the State at the home office of the company in Delaware, as a matter of convenience. Standing alone, and without other evidence, the keeping of the larger portion of its intangible assets in another State does not indicate or show that these items of cash, notes and accounts receivable arose from business activities or operations elsewhere than in North Carolina. It may be noted here that this corporation, with a capital stock of $652,500, made net profits in the tax year amounting to $230,138.76, or a net return on its invested capital of 35 per centum, and that the income tax imposed at the moderate rate of 4½ per centum is, as contended for by the State, $10,243.39.

The appellee has had full opportunity to present any evidence it might have had, showing that its net profits arose from business conducted elsewhere. The Revenue Act, sections 340 and 341, gives full opportunity for the taxpayer to be heard by the Commissioner of Revenue upon application and petition for a revision of its return. That opportunity was afforded this taxpayer. The case was heard on appeal from the Commissioner of Revenue by the judge of the Superior Court, at which time the taxpayer had another opportunity to present evidence, as was done in the *Hans Rees case.* But it appears from the record that the appellee did not, at either of these hearings, undertake to present

such evidence. There is nothing in the record which shows that the allocation formula, as applied to it, works an arbitrary and unreasonable result, deprives it of its property without due process of law, or imposes any burden upon interstate commerce. The judgment of the Superior Court must therefore be

Reversed.

STACY, C. J., concurs on the ground that the case is controlled by the decision in *Underwood Typewriter Co. v. Chamberlain,* 254 U. S., 113, rather than by the decision in *Hans Rees Sons v. North Carolina,* 283 U. S., 123.